# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                              No. CR 15-3955 JB

DARRYL J. GUTIERREZ,

      Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on: (i) the Defendant's Pro Se Notice of Challenge to Jurisdiction, filed May 31, 2016 (Doc. 21)("Motion"); (ii) the Defendant's Notice of Default, filed July 27, 2016 (Doc. 25)("Default Notice"); (iii) the Defendant's Notice of Challenge to the Court's Conduct and Memorandum of Law, filed August 9, 2016 (Doc. 26)("Challenge Motion"); and (iv) the United State[s'] Motion to Strike or to Deny Whatever Relief is Requested in Docket Entries 26 and 27, filed August 12, 2016 (Doc. 28)("United States' Motion"). The Court held a hearing on August 19, 2016. The primary issues are: (i) whether the Court has jurisdiction to try Defendant Darryl Gutierrez for corruptly endeavoring to obstruct the administration of the internal revenue laws and for lying on his 2000-2009 tax returns; (ii) whether Gutierrez is a "taxpayer"; (iii) whether the Court is disqualified from the case for being a partial decision maker; (iv) whether the Court must dismiss the case, because the Court did not respond to the Motion within thirty days; and (v) whether the Court should strike the Default Notice and Challenge Motion, because counsel represents Gutierrez, because those filings are untimely, and because they lack merit. The Court concludes that the arguments which Gutierrez asserts bear the hallmarks of traditional, meritless tax-protestor

arguments. "The federal courts are hostile to such arguments -- frankly, not just to accepting them, but to even hearing them." United States v. Rivera, 2015 WL 4042197, at *19 (D.N.M. June 30, 2015)(Browning, J.). Accordingly, the Court denies the Motion, the requests in the Default Notice, and the requests in the Challenge Motion. The Court also grants in part and denies in part the United States' Motion. It concludes that striking Gutierrez' filings is not warranted, as the Court stated it would not shut the courthouse door on Gutierrez. The Court, however, grants the United States' Motion to the extent that it requests that the Court deny Gutierrez' requested relief.

## FACTUAL BACKGROUND

The Court takes its facts from the Indictment, filed November 5, 2015 (Doc. 2)("Indictment"). The Court does not set forth these facts as findings or the truth. The Court recognizes that the Indictment is largely the United States' version of events and that Gutierrez is presumed innocent.

From 2000 through 2009, Gutierrez filed federal income tax returns falsely claiming tax refunds in the amount of $173,526.00. See Indictment ¶ 1, at 1. Gutierrez, however, was not entitled to that amount in refund; instead, he owed $125,624.00 in federal taxes. See Indictment ¶ 1, at 1. Gutierrez also falsified his W-4 forms for many years claiming exemption from federal income tax withholding. See Indictment ¶¶ 11-15, at 2-3. In addition, he lied on his 2000-09 1040 forms by claiming that he had no wage income even though he earned wages and knew of those wages. See Indictment at 5-9. From 2011 through 2013, Gutierrez sent various notices to the Internal Revenue Service stating that he is not liable for income tax under 26 U.S.C. Subtitle A or for the penalties assessed against him, because he is not a "taxpayer." Indictment ¶¶ 19-25, at 4-5.

**PROCEDURAL BACKGROUND**

On November 5, 2015, the Grand Jury returned an eleven-count indictment against Gutierrez. See Indictment at 1-9. On December 2, 2015, Gutierrez was arrested and arraigned before the Honorable Steven C. Yarbrough, United States Magistrate Judge for the United States District Court for the District of New Mexico. See Clerk's Minutes before Magistrate Judge Steven C. Yarbrough at 1, filed December 2, 2015 (Doc. 5). On February 8, 2016, the Court held a status conference in which Gutierrez mentioned the possibility that he might raise motions that his counsel would not join, and the Court stated that it would not close the courthouse door on Gutierrez. See Clerk's Minutes Before District Judge James O. Browning, at 1-2, filed February 8, 2016 (Doc. 17); Motion ¶ 4, at 2.

1. **The Motion.**

The Motion raises a variety of arguments of which the general theme is that the Court has no power over Mr. Gutierrez. See Notice of Challenge to Jurisdiction at 2, filed May 31, 2016 (Doc. 21-1)("Motion Mem.").[1] For example, he asserts: "The Constitution fixed jurisdiction limit[s] for Congress to exercise legislative jurisdiction **only within** the exterior borders of District of Columbia, herein 'D.C.'. Gutierrez demands the Court provide incontrovertible, lawfully gathered, admissible **evidence** of claimed authority to arbitrarily enlarge its **Constitution**[ally] **fixed jurisdiction limit** beyond the exterior borders of D.C." Motion Mem.

---

[1] The Motion's substantive arguments are all in the Motion Mem, which is attached to the Motion. See Motion Mem. at 1-7. Gutierrez also attaches a Memorandum of Law in Support Notice of Challenge to Jurisdiction at 1-15, filed May 31, 2016 (Doc. 21-8)("Second Motion Mem."). The Second Motion Mem. contains the same overarching arguments as the Motion Mem., but adds some additional citations and a section on "[t]he Meaning of Justice." Second Motion Mem. at 12 ("[**J**]**ustice** in fact, is **the right to be left alone.**")(emphasis in original)(citing Olmstead v. United States, 277 U.S. 438, 478 (1928)). The Court omits summarizing the Second Motion Mem., as much of the discussion would be redundant.

at 2 (emphasis in original).  <u>See id.</u> at 3.  He also contends that the Court has no jurisdiction "within [the] New Mexico Republic, **particularly within Santa Fe County borders**."  Motion Mem. at 2 (emphasis in original).

Flowing from the general theme, he also asserts that the Court has no power over him, because he is a sovereign citizen not subject to the Court's jurisdiction.  <u>See</u> Motion Mem. at 3. According to Gutierrez, in the Treaty of Paris of 1783, "King George III . . . recognized for posterity this victorious body of American People, of which Gutierrez' ancestor was a member, were, and *are sovereigns equal with the King himself*."  Motion Mem. at 3 (emphasis in original).[2]  It follows, so Gutierrez' assertion goes, that he, as a descendant of one of those Americans, is his own sovereign, so cannot be a "taxpayer" who owes taxes to the United States. Motion Mem. at 3.  He also contends that, because he is a sovereign that did not consent to being taxed, the indictment is invalid.  <u>See</u> Motion Mem. at 6-7.  Continuing the theme, he asserts that, pursuant to <u>Penhallow v. Doane's Administration</u>, 3 U.S. 54 (1795), the Court cannot "interface with" him, as he is not "an artificial person," so the United States cannot indict him.  Motion Mem. at 5 (purporting to quote <u>Penhallow v. Doane's Administration</u>, 3 U.S. 54 (1795)("[E]very government is an artificial person and can only interface with another artificial person."))[3]

---

[2]To buttress this argument, Gutierrez attaches a Constructive Notice by Affidavit as Evidence of Sovereign Authority Status of Darryl J. Gutierrez at 1 (recorded May 1, 2013), filed May 31, 2016 (Doc. 21-2)("Gutierrez Sov. Aff.").   In the Gutierrez Sov. Aff., Gutierrez affirms that he is a direct descendent of a Pennsylvanian citizen named Benjamin Smith who fought against the British during the Revolutionary War.  <u>See</u> Gutierrez Sov. Aff. at 1.  According to the Gutierrez Sov. Aff., "[t]he Paris Treaty of Peace guaranteed that Benjamin Smith's heirs would forever retain their sovereignty," so, "as his direct descendent," Gutierrez "claim[s] that sovereignty as My Own as my inheritance of birthright."  Gutierrez Sov. Aff. at 1.  A public notary has signed the Gutierrez Sov. Aff., and it bears the seal of the Santa Fe County Clerk.  <u>See</u> Gutierrez Sovereignty Aff. at 1.

[3]As the Court explores, <u>infra</u>, this quote does not actually exist in <u>Penhallow v. Doane's Administration.</u>

Separate from the purported jurisdictional issues, Gutierrez also argues that the Court cannot lawfully serve as a judge, because the Court has a pecuniary interest in the case. <u>See</u> Motion Mem. at 7 (citing 18 U.S.C. § 208; 28 U.S.C. §§ 144, 455). He also contends that, because the tax laws at issue have no implementing regulation published in the Federal Register, he cannot be indicted for violating those laws. <u>See</u> Motion Mem. at 4.

While Gutierrez had an attorney for every stage of the proceeding, Gutierrez filed the Motion without counsel joining it. <u>See</u> Motion ¶ 5, at 2. Gutierrez subsequently filed a Notice of Correction to Court Filed Defendant's Pro Se Challenge to Jurisdiction at 1, filed June 27, 2016 (Doc. 22)("Correction Notice"), in which he notifies the Court that, contrary to the Motion's labeling that his motion was filed pro se, he "is **NOT** *pro se*." Correction Notice at 4 (emphasis in original). In the Correction Notice, John Butcher, Gutierrez' appointed Assistant Federal Public Defender, noted that he had used the term "pro se," because pro se seemed the most accurate of the available CM/ECF labels, as Mr. Butcher needed to show that he was not joining the Motion. Correction Notice at 2.

## 2. **The Response.**

The United States responds that the Motion is a frivolous tax protestor motion, so the Court should dismiss it out of hand. <u>See</u> United State[s'] Response to Defendant's Pro Se Notice of Challenge to Jurisdiction at 1-2, filed July 14, 2016 (Doc. 23)("Response"). In support of that contention, it notes that the Motion Mem. and its exhibits "appear to have been obtained from a tax protestor website called Sovereignty Education and Defense Ministry." Response at 1 n.1. Although the United States argues that it need not respond to Gutierrez' arguments to prevail, it contends that those arguments fail on their own terms and also under D.N.M. L.R.-47.7. <u>See</u> Response at 2.

First, the United States argues that the Court has jurisdiction. <u>See</u> Response at 3. According to the United States, Gutierrez ignores both 18 U.S.C. § 3231, which vests the federal district courts with jurisdiction over all offenses against the United States, and the Constitution of the United States of America, which empowers Congress to define and punish crimes "irrespective of where they are committed," and to "create and provide for the administration of an income tax." Response at 4 (citing <u>United States v. Collins</u>, 920 F.2d 619, 629 (10th Cir. 1990)). The United States concludes that, because Congress imposed criminal sanctions for Gutierrez' purported conduct under 26 U.S.C. § 7201, and because Congress lawfully did so pursuant to its constitutional powers, the Court has jurisdiction over the case pursuant to 18 U.S.C. § 3231. <u>See</u> Response at 4 (citing <u>Lonsdale v. United States</u>, 919 F.2d 1440, 1448 (10th Cir. 1990)).

Second, the United States argues that the Court has jurisdiction, notwithstanding Gutierrez' arguments that he is not subject to federal taxation as a sovereign or as a New Mexico citizen. <u>See</u> Response at 4-5. The United States does not grapple with this argument substantively, but asserts that it fails, because it is one of the twelve tax protestor arguments that the United States Court of Appeals for the Tenth Circuit dismisses out of hand. <u>See</u> Response at 5 (citing <u>Lonsdale v. United States</u>, 919 F.2d at 1448).

Third, the United States argues that Gutierrez did not need to consent to or contract with the United States for the United States to tax him. <u>See</u> Response at 6. It contends that consent is unnecessary, because several laws on the books require individuals to file tax returns or be subject to criminal penalties. <u>See</u> Response at 6 (citing 26 U.S.C. §§ 1, 6012, 6301-07, 7201-17). It follows, according to the United States, that Gutierrez' lack of consent does not affect the indictment. <u>See</u> Response at 4.

Fourth, the United States argues that, contrary to Gutierrez' contentions, the criminal statutes at issue do not need implementing regulations for the United States to charge Gutierrez. See Response at 7. To support that proposition, the United States argues that 44 U.S.C. § 1505(a) does not require implementing regulations "for each section of the United States Code." Response at 7. It adds that the Tenth Circuit has recognized this argument as another frivolous tax protestor argument. See Response at 7 (citing Lonsdale v. United States, 919 F.2d at 1447). The United States concludes that the Court's jurisdiction is proper, and that Gutierrez' other arguments lack merit, so the Court should deny the Motion.

**3.**     **The Reply.**

Undeterred, Gutierrez replies. See Alleged Defendant Replies to United States' Response at 1, filed July 27, 2016 (Doc. 24-1)("Reply").[4] Unlike the Motion, the Reply lacks a uniting theme, and its desultory approach in refuting the United States' arguments is more of a shotgun spray than a targeted assault. See Reply at 1-7. The Court attempts to capture all of Gutierrez' arguments below.

Gutierrez maintains that the Court lacks jurisdiction, because the Constitution limits the Court's jurisdiction. See Reply at 1. He also avers that the United States violated the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, because it "arbitrarily changed Gutierrez' declared status as a nontaxpayer to a tax protestor." Reply at 3. Gutierrez adds that the case raises political questions beyond the Court's jurisdiction. See Reply at 3-4. He argues that the Court cannot label his arguments frivolous without "a separate pleading and trial on the matter of being frivolous." Reply at 4. It follows, according to Gutierrez, that the Court would violate due

---

[4]Gutierrez' counsel filed a separate Defendant's Reply to the United States Response at 1-2, filed July 27, 2016 (Doc. 24), but that document merely states that Gutierrez files a reply that counsel does not join. Gutierrez' substantive arguments are in the Reply, so the Court cites to that document above.

process if it labeled his arguments frivolous and that it would also present a conflict of interest. See Reply at 4.

Gutierrez also argues that the United States "cited irrelevant case law" when it cited Tenth Circuit precedent, because the Court is an Article IV legislative court, which "can only rule on what Congress says that [it] can rule on." Reply at 3. See id. at 5. Gutierrez also accuses the United States of spewing political propaganda by citing Tenth Circuit caselaw. See Reply at 3 ("[The] United States abus[es] irrelevant case law as a means of [disseminating] political propaganda."); id. at 4 ("[The] United States is: . . . abusing federal case law and *stare decisis* as political propaganda that is irrelevant."); id. ("[The] United States is: . . . [t]rying to deceive the audience that [is] the target of such propaganda in order to deprive them of [c]onstitutionally protected rights to life, liberty, and property.").

Gutierrez concludes his Reply by arguing generally that the United States fails to refute his arguments. See Reply at 5-7. Specifically, he contends that the United States does not demonstrate that he consents to jurisdiction or consents to being taxed, nor does the United States demonstrate that he is not a sovereign. See Reply at 5-6. He also argues that the United States does not present evidence to support the indictment. See Reply at 6. He adds that the United States does not refute any of the caselaw he cites. See Reply at 7. Finally, Gutierrez argues that the United States does not refute his contention that the Court has a pecuniary interest in the proceeding. See Reply at 7 ("[T]hereby its silence **admits the Court is judicially unsanitary**.")(emphasis in original).

4.    **Default Notice.**

Gutierrez subsequently files the Notice of Default, in which he argues that, because the Court did not respond to his Motion within thirty days, the Court admits that: (i) it lacks

jurisdiction; (ii) Gutierrez is a sovereign; (iii) Gutierrez is a nontaxpayer; (iv) Gutierrez did not

consent to being taxed; (v) Gutierrez has no tax liability; (vi) the indictment is invalid; and (vii)

the Court has a pecuniary interest, or, as Gutierrez phrases it, "the Court is **not** judicially

sanitary." Notice of Default at 2-3 (emphasis in original). He concludes that the Court and the

United States, by continuing to hold him, is violating the Fifth Amendment to the Constitution of

the United States of America, and the Court is estopped from challenging anything in the

Motion. See Notice of Default at 3. Thus, according to Gutierrez, the Court must dismiss the

Indictment with prejudice. See Notice of Default at 3.

>       **5.      Challenge Motion.**

Gutierrez also files the Challenge Motion, which raises many of the same arguments

already mentioned. See Notice of Challenge to the Court's Conduct at 3-4, filed August 9, 2016

(Doc. 26-1)("Challenge Motion Notice"); Memorandum of Law at 2-7, filed August 9, 2016

(Doc. 26-2)("Challenge Motion Mem.").[5] The Court details only those arguments that diverge

from Gutierrez' prior filings.

First, Gutierrez argues that Damon P. Martinez, former United States Attorney for the

District of New Mexico, and Assistant United States Attorneys ("AUSA") Reeve Swainston and

Margaret M. Vierbuchen -- the AUSAs prosecuting the case -- violated the United States

Attorneys' Manual. See Challenge Motion Notice at 5-7; Challenge Motion Mem. at 12-16.

This argument's general thrust is that the United States Attorneys' Manual requires the United

States to let the grand jurors know all of Gutierrez' arguments -- e.g., that Gutierrez is a

sovereign -- before the grand jurors may return an indictment. See Challenge Motion Notice at

5-7; Challenge Motion Mem. at 12-16. Second, Gutierrez appears to assert a freeform due

---

[5]As with Gutierrez' other Motion, the Challenge Motion's substantive arguments are
attached in the Challenge Motion Notice and Challenge Motion Mem.

process argument that the United States is depriving him of property without process by prosecuting him for tax crimes. See Challenge Motion Notice at 6-7 ("Give me Liberty or give me death.")(emphasis omitted); Challenge Motion Mem. at 16-17. Accordingly, Gutierrez requests that the Court dismiss the indictment. See Challenge Motion Mem. at 17.

**6.     The United States' Motion.**

The United States argues that the Court should strike or deny the requests in the Default Notice and the Challenge Motion, because: (i) Gutierrez filed those documents without his counsel joining them; (ii) those documents are untimely; (iii) and they lack merit. See United States' Motion at 1. First, the United States asserts that, while Gutierrez has the right to represent himself, he does not have a right to hybrid representation where his counsel files some motions and Gutierrez files others. See United States' Motion at 1 (citing United States v. Hill, 526 F.2d 1019, 1025 (10th Cir. 1975)). It follows, according to the United States, that the Court should strike or deny the requests in the Default Notice and Challenge Motion, because Gutierrez has counsel, and his counsel has not joined those motions. See United States' Motion at 1-2. The United States next asserts that the Court must dismiss the Default Notice and the Challenge Motion, because they are untimely under the Court's scheduling order. See United States' Motion at 2. The United States also argues that the Court should dismiss the Default Notice and the Challenge Motion, because they are frivolous tax protestor arguments. See United States' Motion at 2-3.

**7.     The Hearing.**

The Court held a hearing on August 19, 2016. See Transcript of Motion Proceedings at 2:1-2 (taken August 19, 2016)(Court), filed September 16, 2016 (Doc. 34)("Tr."). On the Motion, Gutierrez asserted succinctly that "from the record before you, it has not been proven

that jurisdiction has been properly given to the Court to proceed" and had nothing more to say. Tr. 3:23-4:1 (Gutierrez). The United States, similarly, remained brief, and rested on its written filings. See Tr. 4:9-11 (Vierbuchen). The Court orally denied Gutierrez' challenge to its jurisdiction, noting that it had seen similar arguments and that the Tenth Circuit's decisions on these arguments bind it. See Tr. at 4:12-5:10 (Court). Turning to the Default Notice, Gutierrez had nothing further to say except requesting that the Court publish its findings of fact and conclusions of law. See Tr. at 5:20-24 (Gutierrez). He requested the same work for the Challenge Motion. See Tr. at 7:19-21 (Gutierrez). The United States rested its arguments again on the briefings. See Tr. at 6:21-7:3 (Vierbuchen). The Court agreed to write an opinion for Gutierrez. See Tr. at 5:25-6:12 (Court); id. at 7:4-25 (Court, Gutierrez).

Turning to the United States' Motion, the United States rested on its briefing. See Tr. at 9:11 (Vierbuchen); id. at 10:22 (Vierbuchen). Gutierrez made four quick arguments. See Tr. at 9:16-10:17 (Gutierrez). First, he contended that the United States represents that he submitted this argument pro se; he argued that, instead, he submits them "sui juris," so the United States argument is "irrelevant." Tr. at 9:17-21 (Gutierrez). Second, he argued that his Motion, the Default Notice, and the Challenge Motion are timely, because challenges to jurisdiction can be made at any time. See Tr. at 9:22-25 (Gutierrez). Third, he contended that his arguments are not frivolous and that, contrary to the United States' assertions, he cites authority, because he cited the Supreme Court of the United States and the Constitution. See Tr. at 10:2-11 (Gutierrez). Finally, he contended that the United States misconstrues the relief he requests; the only relief he requests is "justice." Tr. at 10:14-17 (Gutierrez). The Court subsequently granted the United States' Motion in part and denied it in part. See Tr. at 8:16-9:8 (Court); id. at 10:23-11:8 (Court). It denied the United States' Motion to the extent that it requested the Court to strike the

Default Notice and the Challenge Motion, because the Court had told Gutierrez that it "wouldn't shut the courthouse door" on Gutierrez' motions filed separately from his counsel, and because the Court had to always be mindful of its jurisdiction. Tr. at 8:16-9:5 (Court); id. at 10:23-11:3. It granted the United States' Motion, however, to the extent that the United States requests that the Court deny Gutierrez relief. See Tr. at 9:3-8 (Court); id. at 11:5-6 (Court). The Court told Gutierrez it would also write an opinion on this issue. See Tr. at 11:6-8 (Court).

## LAW REGARDING FEDERAL COURTS' CRIMINAL JURISDICTION

Federal courts' criminal jurisdiction arises exclusively from Congressional Acts. See Dowling v. United States, 473 U.S. 207, 213 (1985); United States v. Hudson, 11 U.S. 32, 32 (1812); Hudspeth v. Melville, 127 F.2d 373, 375 (10th Cir. 1941). In an eloquent exposition, William Johnson, Associate Justice of the Supreme Court of the United States, explained:

> The powers of the general Government are made up of concessions from the several states -- whatever is not expressly given to the former, the latter expressly reserve. The judicial power of the United States is a constituent part of those concessions, -- that power is to be exercised by Courts organized for the purpose, and brought into existence by an effort of the legislative power of the Union. Of all the Courts which the United States may, under their general powers, constitute, one only, the Supreme Court, possesses jurisdiction derived immediately from the constitution, and of which the legislative power cannot deprive it. All other Courts created by the general Government possess no jurisdiction but what is given them by the power that creates them, and can be vested with none but what the power ceded to the general Government will authorize them to confer.

United States v. Hudson, 11 U.S. at 33. Accordingly, the Court has criminal jurisdiction only to the extent that Congress grants such jurisdiction, and there is no federal criminal common law. See Hudspeth v. Melville, 127 F.2d at 374. See also United States v. Dire, 680 F.3d 446, 468 (4th Cir. 2012)("[T]here are no federal common law crimes.").

Congress has, however, granted "original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." 18 U.S.C. § 3231. This grant of

original criminal jurisdiction extends to all of the states in the Union and not just to the District

of Columbia and the United States' territorial possessions.  See United States v. Collins, 920

F.2d 619, 629 (10th Cir. 1990).

> Dickstein's motion to dismiss advanced the hackneyed tax protester refrain that
> federal criminal jurisdiction only extends to the District of Columbia, United
> States territorial possessions and ceded territories. Dickstein's memorandum
> blithely ignored 18 U.S.C. § 3231 which explicitly vests federal district courts
> with jurisdiction over "all offenses against the laws of the United States."

United States v. Collins, 920 F.2d at 629 (quoting 18 U.S.C. § 3231).  See United States v.

Crockett, 207 F. App'x 935, 937 (10th Cir. 2006)(unpublished)[6]("Mr. Crokett was charged with

federal crimes, and federal district courts have exclusive jurisdiction over all offenses against the

United States, including tax crimes as defined in Title 26 of the United States Code.").  To

establish jurisdiction, the United States does not need to show each of the crime's elements in the

indictment; rather, so long as the offense alleged arises from a federal statute, "the district court

has subject matter jurisdiction."  United States v. Mullen, 160 F. App'x 711, 713 (10th Cir.

2005)(unpublished).  See United States v. DeLeon, 2018 WL 1388462, at *2 (D.N.M. March 13,

2018)(Browning, J.).

---

[6]United States v. Crockett is an unpublished Tenth Circuit opinion, but the Court can rely
on an unpublished Tenth Circuit opinion to the extent its reasoned analysis is persuasive in the
case before it.  See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished opinions are not precedential,
but may be cited for their persuasive value."). The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and . . . citation
> to unpublished opinions is not favored. . . . However, if an unpublished
> opinion . . . has persuasive value with respect to a material issue in a case and
> would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court concludes that United
States v. Crockett, United States v. Mullen, Sorenson v. O'Neill, and United States v. Aston have
persuasive value with respect to a material issue, and will assist the Court in its preparation of
this Memorandum Opinion and Order.

<u>**LAW REGARDING AN INDICTMENT'S SUFFICIENCY**</u>

The Sixth Amendment to the Constitution of the United States of America provides that, "in all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation." U.S. Const. amend. VI. "This constitutional protection is implemented by the requirement of Rule 7(c)(1) that the indictment or information 'be a plain, concise, and definite written statement of the essential facts constituting the offense charged.'" Charles A. Wright, Federal Practice and Procedure § 125, at 542 (4th ed. 2008)(quoting Fed. R. Crim. P. 7(c)(1)). Rule 7(c) of the Federal Rules of Criminal Procedure provides:

**(c) Nature and Contents.**

> **(1) In General.** The indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government. It need not contain a formal introduction or conclusion. A count may incorporate by reference an allegation made in another count. A count may allege that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means. For each count, the indictment or information must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated. For purposes of an indictment referred to in section 3282 of title 18, United States Code, for which the identity of the defendant is unknown, it shall be sufficient for the indictment to describe the defendant as an individual whose name is unknown, but who has a particular DNA profile, as that term is defined in that section 3282.

> **(2) Citation Error.** Unless the defendant was misled and thereby prejudiced, neither an error in a citation nor a citation's omission is a ground to dismiss the indictment or information or to reverse a conviction. Fed. R. Crim. P. 7(c).

"'An indictment is sufficient if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense.'" <u>United States v. Todd</u>, 446 F.3d 1062, 1067 (10th Cir. 2006)(citing <u>United States v. Dashney</u>, 117 F.3d 1197, 1205 (10th Cir. 1997)). Further, an

indictment "need not quote the statutory language to be legally sufficient." United States v. Bullock, 914 F.2d 1413, 1414 (10th Cir. 1990)(citing Hamling v. United States, 418 U.S. 87 (1974)). The Tenth Circuit also has made clear that, when "[i]nterpreting an indictment, [courts] are governed by practical rather than technical considerations." United States v. Phillips, 869 F.2d 1361, 1364 (10th Cir. 1988)(citing United States v. Martin, 783 F.2d 1449, 1452 (9th Cir. 1986)("Charging documents are tested by whether they apprise the defendant of what evidence he must be prepared to meet. . . . An indictment should be read in its entirety, construed according to common sense and interpreted to include facts which are necessarily implied."); United States v. Maggitt, 784 F.2d 590, 598 (5th Cir. 1986)("An indictment is to be read in light of its purpose, which is to inform the accused of the charges.")).

## LAW REGARDING TAX PROTESTORS

Federal courts are hostile to tax protestor arguments. See, e.g., Lonsdale v. United States, 919 F.2d 1440, 1448 (10th Cir. 1990); Crain v. Comm'r., 737 F.2d 1417, 1417 (5th Cir. 1984); United States v. Rivera, 2015 WL 4042197, at *19. When confronted with these arguments, a federal court is not required to "refute" them "with somber reasoning and copious citation to precedent." Crain v. Comm'r, 737 F.2d at 1417. See Sorenson v. O'Neill, 73 F. App'x 341, 343 (10th Cir. 2003)(unpublished)("We need not waste judicial resources explaining once again why the Sorensons are subject to federal tax laws, just like everyone else who lives in the United States."); United States v. Rivera, 2015 WL 4042197, at *19 (noting that the Tenth Circuit has cited the language from Crain v. Commissioner with approval several times and collecting cases). The United States Court of Appeals for the Fifth Circuit has offered the following rationale for foregoing courts' usual duty to elaborate their reasoning:

> We are sensitive to the need for the courts to remain open to all who seek in good faith to invoke the protection of law. An appeal that lacks merit is not always --

or often -- frivolous.  However, we are not obliged to suffer in silence the filing of baseless, insupportable appeals presenting no colorable claims of error and designed only to delay, obstruct, or incapacitate the operations of the courts or any other governmental authority.  Crain's present appeal is of this sort.  It is a hodgepodge of unsupported assertions, irrelevant platitudes, and legalistic gibberish.  The government should not have been put to the trouble of responding to such spurious arguments, nor this court to the trouble of "adjudicating" this meritless appeal.

Crain v. Comm'r, 737 F.2d at 1417-18.  The United States Tax Court has offered a similar

rationale:

The oft-cited opinion in *Crain v. Commissioner,* 737 F.2d at 1417, observes that one reason *not* to refute frivolous arguments is that "to do so might suggest that these arguments have some colorable merit."  The observation is certainly valid.  It is this Court's experience that taxpayers who take frivolous positions often have learned those positions from self-appointed anti-tax gurus with prepackaged pseudo-legal arguments that include inapposite citations from such sources as the Federal Register, inapplicable State and Federal statutes, court opinions taken out of context, and the Internal Revenue Manual (IRM).  Some taxpayers seem to understand their frivolous arguments imperfectly, if at all, and seem not to understand the nature of the authorities they cite.  If, as it seems, such a taxpayer has been persuaded of these positions by the mere presence of legalese, then it is entirely possible (as *Crain* anticipated) that a serious discussion of a frivolous position will seem to him to confer respectability on that position.

For example, when we take five paragraphs (in part I.E.2 above) to explain why 27 C.F.R. section 70.42(b)(1) has no effect on the validity of an income tax SFR, we incur a risk: A legally unsophisticated taxpayer may wrongly infer that, if it took that much reasoning and writing to defeat the argument, then the argument must have had *something* going for it.  The inference would be wrong, of course.  Mr. Wnuck's 27 C.F.R. argument is hardly a legal argument at all; and all that is there is manifestly wrong for multiple reasons.  But since the actual substance of the frivolous anti-tax issue often seems to elude the litigant, and since all that affects him is the superficial appearance of legal matter, an explanation of why his argument is wrong may even be counter-productive.  Perversely, the seriousness of the refutation becomes, in his mind, imputed to the frivolous argument itself.  This is sometimes a good reason *not* to address frivolous arguments.

There is thus little advantage to be gained by addressing frivolous arguments, and there are disadvantages that may accrue from doing so.  For that reason, litigants who present frivolous arguments should not expect to see them answered in opinions of this Court.

Wnuck v. Comm'r, 136 T.C. 498, 512-13 (2011), as amended (June 1, 2011)(Gustafson, J.)(emphasis in original).

The Tenth Circuit has a list of tax arguments that they have determined are "completely lacking in legal merit" and are "patently frivolous," so can be dismissed out of hand:

> (1) individuals (free born, white, preamble, sovereign, natural, individual common law de jure citizens of a state, etc.) are not persons subject to taxation under the Internal Revenue code; (2) the authority of the United States is confined to the District of Columbia; (3) the income tax is a direct tax which is invalid absent apportionment and *Pollock v. Farmers' Loan & Trust Co.*, 157 U.S. 429 . . . *modified* 158 U.S. 601 . . . (1895), is authority for that and other arguments against the government's power to impose income taxes on individuals; (4) the Sixteenth Amendment to the Constitution is either invalid or applies only to corporations; (5) wages are not income; (6) the income tax is voluntary; (7) no statutory authority exists for imposing an income tax on individuals; (8) the term income as used in the tax statutes is unconstitutionally vague and indefinite; (9) individuals are not required to file tax returns fully reporting their income; and (10) the Anti-Injunction Act is invalid.

Lonsdale v. United States, 919 F.2d 1440, 1448 (10th Cir. 1990). In addition to those listed above, it is frivolous to argue that

> (1) the Commissioner of Internal Revenue and employees of the Internal Revenue Service have no power or authority to administer the Internal Revenue Laws . . . because of invalid or nonexistent delegations of authority, lack of publication of delegations of authority in the Federal Register, violations of the Paperwork Reduction Act, and violations of the Administrative Procedure Act, including the Freedom of Information Act; and (2) tax forms, including 1040, 1040A, 1040EZ and other reporting forms, are invalid because they have not been published in the Federal Register.

Lonsdale v. United States, 919 F.2d at 1448. See United States v. Ford, 514 F.3d 1047, 1053 (10th Cir. 2008); Sorenson v. O'Neill, 73 F. App'x at 343 ("Nor need we explain why the U.S. Attorney's office has both the authority and the duty to represent the United States and its employees in suits challenging the imposition and collection of tax revenues.").[7]

_____

[7]There are many online resources collecting common protestor arguments, including a Department of Justice manual, some of which provide reasoning or cases refuting those

"[T]ax protestors are a community of sorts."  United States v. Rivera, 2015 WL 4042197,

at *20.  The Court has recounted:

> They must be, as information-sharing is the only way to explain how their
> theories can be, at once, so uniform and so odd. Anyone with access to the
> internet can log into YouTube and watch videos of tax protestors purporting to
> "teach" viewers how to avoid tax liability -- or any other kind of debt, apparently.

United States v. Rivera, 2015 WL 4042197, at *20.  Contemporary tax protestors have roots in

two distinct groups: (i) a far-left, pseudo-pacifistic, anti-Vietnam War protest movement; and

(ii) a right-wing group opposed to the ratification of the Sixteenth Amendment of the

Constitution of the United States of America, which authorizes the income tax.  See Tax Protest

Movement, Anti-Defamation League, https://www.adl.org/resources/backgrounders/tax-protest-

movement (last visited April 26, 2018)("ADL Article").  The far left group, referring to

themselves as "war tax resisters," argues that it is "immoral" to pay income taxes to support the

"imperialistic American military regime," so refuse to pay income tax unless the United States

guarantees that their taxes will not fund the military.  ADL Article.  The far left group's numbers

have dwindled since the 1980s.  See ADL Article.

The right-wing group, in contrast, argues that the income tax invades their liberty and

their right to their income, so instigated various attempts to repeal the Sixteenth Amendment.

See ADL Article.  Over time, attempts to repeal that amendment diminished, and concerted

efforts to alter the Sixteenth Amendment's and various tax laws' meanings through litigation

began.  See ADL Article.

---

arguments.   See, e.g., Department of Justice, Illegal Tax Protesters, at 1-46
https://www.justice.gov/sites/default/files/tax/legacy/2006/02/28/40ctax.pdf (last visited April
26, 2018)("DOJ Manual");   Daniel B. Evans, The Tax Protestor FAQ https://evans-
legal.com/dan/tpfaq.html #taxpayer (last visited April 26, 2018); Tax Protest Movement, Anti-
Defamation League, https://www.adl.org/resources/backgrounders/tax-protest-movement (last
visited April 26, 2018).

The pioneer behind these [litigation] efforts seems to have been a Wichita, Kansas, building contractor named Arthur Porth who, in 1951, filed a claim to recover his income tax payment of $[135.00[8]]. Porth argued that the 16th Amendment was unconstitutional because it placed the taxpayer in a position of involuntary servitude contrary to the 13th Amendment. Not surprisingly, the courts found little merit in his argument, but this failed to stop Porth, who embarked upon a long career of inventive challenges to the income tax laws. His most influential effort came in the early 1960s, when he filed a tax return that was blank except for a statement declaring that he was pleading the Fifth Amendment (i.e., claiming that filling out a tax return violated his right of protection from self-incrimination). Moreover, Porth became an activist; he traveled around the country distributing tax protest literature, including a book titled A Manual for Those Who Think That They Must Pay an Income Tax. Not surprisingly, Porth was convicted on various tax evasion charges and sent to prison, but he had already become a grass-roots hero to the nascent tax protest movement.

ADL Article. See Porth v. Brodrick, 214 F.2d 925-26 (10th Cir. 1954); United States v. Porth, 426 F.2d 519, 522-23 (10th Cir. 1970). Although over seventy years old, the Tenth Circuit's conclusion in Porth v. Brodrick that Porth's arguments were frivolous could be recycled in many tax protestor opinions issued today:

The allegations of the petition are very broad and it is difficult, if not impossible, to determine therefrom just what the complaint is except that there exists a strong dislike for the taxing procedure. Apparently the taxpayer, while recognizing the taxing power of the United States, attacks both the legality of the Sixteenth Amendment and the constitutionality of the Federal tax laws, rules and regulations enacted pursuant thereto. It is admitted that a federal income tax may be levied under the Sixteenth Amendment and no law, rule guaranteed the taxpayer by the Constitution. The claim is clearly unsubstantial and without merit. Levering & Garrigues Co. v. Morrin, 289 U.S. 103. . . [(1933)]. In Abney v. Campbell, 5 Cir., 206 F.2d 836, certiorari denied 346 U.S. 924, . . . similar allegations were said to be far-fetched and frivolous. We think the description applies to the allegations in this case.

Porth v. Brodrick, 214 F.2d at 926. In revisiting Mr. Porth sixteen years later -- this time for criminal tax fraud and evasion -- the Tenth Circuit noted: "Porth's defense primarily grew out of his long-time dislike for the taxing and money systems of the United States, his fanatical belief

_____

[8]The ADL Article lists the tax payment as $151.00, but the Tenth Circuit states that the sum was $135.00. Compare ADL Article with Porth v. Brodrick, 214 F.2d at 925. The Court adopts the Tenth Circuit's factual statement.

that they are unconstitutional, and his right to resist in good faith. . . .  There is a total lack of

substance in [his] contention[s]; [they] remain far-fetched and frivolous."  United States v. Porth,

426 F.2d at 523.

> Despite Porth's failures, the tax protestor movement continues today:

> A variety of tax protest theorists followed in Porth's footsteps; as a result, the movement increasingly became a menagerie of groups and individuals devising reasons why tax laws were invalid or did not apply to most Americans.  The focus of the movement's efforts became the development and propagation of pseudolegal and pseudohistorical theories intended to delegitimize the federal income tax (and, in many cases, state income taxes as well).

ADL Article.  Thus, although the right-wing movement against the income tax was founded on

libertarian-like notions of freedom from government, contemporary tax-protestor ideology took a

sharp turn somewhere toward the bizarre.  According to the Southern Poverty Law Center, at

least some tax protestors' convictions flow from the belief that the United States is governed by a

secret judicial regime bent on enslaving American citizens, and that judges are all in on it:

> At some point in history . . . the American government set up by the founding fathers  -- with a legal system the sovereigns refer to as "common law" -- was secretly replaced by a new government system based on admiralty law, the law of the sea and international commerce.  Under common law, or so they believe, the sovereigns would be free men.  Under admiralty law, they are slaves, and secret government forces have a vested interest in keeping them that way.  Some sovereigns believe this perfidious change occurred during the Civil War, while others blame the events of 1933 when the U.S. abandoned the gold standard.  Either way, they stake their lives and livelihoods on the idea that judges around the country know all about this hidden government takeover but are denying the sovereigns' motions and filings out of treasonous loyalty to hidden and malevolent government forces.[9]

Sovereign Citizens Movement, Southern Poverty Law Center,  https://www.splcenter.org/

fighting-hate/extremist-files/ideology/sovereign-citizens-movement  (last  visited  April  26,

_____

[9]If there is a secret judicial cabal applying admiralty law to enslave American citizens, the Court is unaware of it.

2018)).  The Court has previously considered tax protestor arguments resulting from other

eccentric premises:

> [T]hese individuals believe that the United States owns corporate-shell facsimiles of them, over which the individuals retain some control -- enough to draw expenses from the shell.  The Southern Poverty Law Center describes a "philosophy" very similar to the Riveras -- in that it puts forth many of the same strange arguments and has many of the same bizarre hallmarks -- in its page on sovereign citizens:

>> Since 1933, the U.S. dollar has been backed not by gold, but by the "full faith and credit" of the U.S. . . .  According to sovereign "researchers," this means that the government has pledged its citizenry as collateral, by selling their future earning capabilities to foreign investors, effectively enslaving all Americans.  This sale, they claim, takes place at birth.  When a baby is born in the U.S., a birth certificate is issued, and the hospital usually requires that the parents apply for a Social Security number at that time.  Sovereigns say that the government then uses that birth certificate to set up a kind of corporate trust in the baby's name -- a secret Treasury account -- which it funds with an amount ranging from $600,000 to $20 million, depending on the particular variant of the sovereign belief system.  By setting up this account, every newborn's rights are cleverly split between those held by the flesh-and-blood baby and the ones assigned to his or her corporate shell account.

>> The sovereigns believe evidence for their theory is found on the birth certificate itself.  Since most certificates use all capital letters to spell out a baby's name, JOHN DOE, for example, is actually the name of the corporate shell identity, or "straw man," while John Doe is the baby's "real," flesh-and-blood name.  As the child grows older, most of his legal documents will utilize capital letters, which means that his state-issued driver's license, his marriage license, his car registration, his criminal court records, his cable TV bill and correspondence from the IRS all will pertain to his corporate shell identity, not his real, sovereign identity.

>> The process sovereigns have devised to split the straw man from the flesh-and-blood man is called "redemption," and its purpose is two-fold.  Once separated from the corporate shell, the newly freed man is now outside of the jurisdiction of all admiralty laws. More importantly, by filing a series of complex, legal-sounding documents, the sovereign can tap into that secret Treasury account for his own purposes.  Over the past 30 years, hundreds of sovereigns have attempted to perfect the process by packaging and promoting different combinations of forms and paperwork.  While no one has ever succeeded, for the obvious reason that these theories are not true, sovereigns are nonetheless convinced with the religious certainty of a

true cult believer that they're close.  All it will take, say the promoters of
the redemption scam, is the right combination of words.

United States v. Rivera, 2015 WL 4042197, at *20-21 (quoting Sovereign Citizens Movement,

Southern    Poverty    Law    Center,    https://www.splcenter.org/    fighting-hate/extremist-

files/ideology/sovereign-citizens-movement (last visited April 26, 2018)).  The Court, ultimately,

rejected the tax protestors' arguments as frivolous and dismissed the case.  See United States v.

Rivera, 2015 WL 4042197, at *22-24.

## ANALYSIS

The Court will deny the requests in Gutierrez' Motion, Default Notice, and Challenge

Motion.    Those three filings bear the "hallmarks" of "traditional, meritless tax-protestor"

contentions, so the Court will, as the Tenth Circuit commands, "make short work " of Gutierrez'

arguments.  United States v. Rivera, 2015 WL 4042197, at *19.  His premier argument is that the

Court lacks jurisdiction, because Congress has not granted the Court jurisdiction anywhere

beyond the District of Columbia.    See Motion Mem. at 2-3.  Unfortunately for Gutierrez,

granting the federal courts jurisdiction beyond the District of Columbia is one of the very first

things that Congress ever did.  See Judiciary Act of 1789, ch. 20, 1 Stat. 73 § 9;[10] 18 U.S.C.

§ 3231.  See also United States v. Collins, 920 F.2d at 629 (concluding that the jurisdictional

argument advanced is a typical tax protestor argument that can be dismissed).    Likewise,

Gutierrez' arguments that: (i) he is a sovereign citizen free from taxation, unless he consents to

---

[10]The Judiciary Act of 1789's original text reads: "That the district courts shall have,
exclusively of the courts of the several states, cognizance of all crimes and offences that shall be
cognizable under the authority of the United States, committed within their respective district, or
upon the high seas."  Judiciary Act of 1789, ch. 20, 1 Stat. 73 § 9.

it;[11] (ii) the indictment is invalid, because there are no regulations about the laws under which he

is indicted published in the federal register;[12] and (iii) the United States is depriving him of

---

[11]Gutierrez theory of sovereignty is notable in that it appears to be a new one; in the Court's brief research of tax protestor arguments, the Court did not uncover any model from which Gutierrez crafted his sovereignty argument. In short, he asserts that, because King George III, via the Treaty of Paris of 1783, granted American citizens sovereignty, Gutierrez, as a direct descendant of a 1783 American citizen, enjoys the same individual sovereignty by virtue of his bloodline. See Motion Mem. at 3. The Court is mindful that the Tenth Circuit has told district courts not to waste judicial resources grappling with tax protestor arguments, but the Court would not be doing its job if it did not inquire whether a gigantic tax loophole lurked within the Treaty of Paris of 1783. Alas, upon inspection, the Court concludes that the United States will not need to negotiate a new treaty with Great Britain. The treaty's relevant provision reads:

> His Brittanic Majesty acknowledges the said United States, viz. New Hampshire, Massachusetts Bay, Rhode Island and Providence Plantations, Connecticut, New York, New Jersey, Pennsylvania, Maryland, Virginia, North Carolina, South Carolina and Georgia, to be free sovereign and independent states, that he treats them as such, and for himself, his heirs, successors, relinquishes all claims to government, propriety and territorial rights of the same and every part thereof.

The Definitive Treaty of Peace 1783, Great Britain-U.S., art. I, Sept. 30, 1783 http://avalon.law.yale.edu/18th_century/paris.asp (last accessed April 27, 2018). The provision has naught about individual sovereignty; rather, King George III acknowledges the United States' sovereignty. Accordingly, the Court concludes that Gutierrez' sovereignty argument lacks merit.

[12]The general thrust of Gutierrez' argument here is that 44 U.S.C. § 1505(a) requires certain documents to be published in the Federal Register and, because the statutes he is indicted under -- 26 U.S.C. § 7206(1) and § 7212(a) -- are not published in the Federal Register, the indictment is invalid. See Motion Mem. at 4. 44 U.S.C. § 1505(a), however, does not require 26 U.S.C. § 7206(1) and § 7212(a) to be published in the Federal Register. Rather, 44 U.S.C. § 1505(a) requires the following to be published in the Federal Register: (i) "Presidential proclamations"; (ii) "Executive orders"; (iii) "documents or classes of documents" that "the President may determine from time to time have general applicability and legal effect"; and (iv) "documents or classes of documents" that an "Act of Congress" mandates must be published in the Federal Register. 26 U.S.C. § 7206(1) and § 7212(a) are not executive orders or presidential proclamations, nor is there evidence that Congress or the President has decided either must be published in the Federal Register. Accordingly, this argument lacks merit.

Gutierrez' argument here is a variant of an oft-repeated tax-protestor refrain: because laws are not published in the Federal Register, they must have no legal effect. See DOJ Manual at 40. Federal Register publication is typically required, however, so that the public has notice of legal duties. See 5 U.S.C. § 552(a)(1); United States v. Bowers, 920 F.2d 220, 221-22 (4th Cir. 1990). Gutierrez' argument is thus more fundamentally flawed, because 26 U.S.C.

liberty and property without process by prosecuting him for tax crimes can be dismissed out of hand.[13]  See Lonsdale v. United States, 919 F.2d at 1448; United States v. Porth, 426 F.2d at 522-23.

The Court also rejects Gutierrez' remaining arguments.  First, he contends that the Court must be disqualified under 18 U.S.C. § 208, and 28 U.S.C. §§ 144, 455.  See Motion Mem. at 7. Under 28 U.S.C. §§ 144, 455, a judge must disqualify himself or herself if he or she has a personal bias or if the judge's impartiality may reasonably be questioned.  See 28 U.S.C. §§ 144, 455.  Gutierrez' § 144 argument fails, because he has not filed an affidavit stating "the facts and the reasons" for his belief that a personal bias exists.  28 U.S.C. § 144.  See Hinman v. Rogers, 831 F.2d 937, 939 (10th Cir. 1987)("The affidavit is strictly construed against the affiant, and there is a substantial burden on the moving party to demonstrate the judge is not impartial."). Even if Gutierrez' pleadings can serve as the requisite affidavit, he does not assert with the required particularity why the Court is partial here.  See Hinman v. Rogers, 831 F.2d at 939

_____

§ 7206(1) and § 7212(a) are specific enough to provide the requisite notice; in other words, the statutes are not void for vagueness.  See United States v. Bowers, 920 F.2d at 222 ("[T]heir duty to pay those taxes is manifest on the face of the statutes.").  26 U.S.C. § 7206(1) generally states that persons must not lie on their tax returns, and § 7212(a) says that persons cannot impede or intimidate United States employees acting in an official capacity under the Internal Revenue Code, nor may they obstruct, impede or endeavor to obstruct or impede the administration of the Internal Revenue Code.  Both statutes sufficiently describe the legal duty such that additional publication in the Federal Register is not needed.  See United States v. Cochrane, 985 F.2d 1027, 1031 (9th Cir. 1993)(concluding that "a person of ordinary intelligence could understand that [26 U.S.C. § 7206(1)] criminalizes lying on any form or document filed with the IRS"); United States v. Wood, 384 F. App'x 698, 706 (10th Cir. 2010)(unpublished)(concluding that 26 U.S.C. § 7212(a) is not void for vagueness) abrogated on other grounds Marinello v. United States, 138 S. Ct. 1101, 1110 (2018).

[13]Gutierrez' appears to invoke procedural due process and also appears to premise this argument on his sovereign-citizen status.  That argument fails for the reason that he is not a sovereign citizen.  See supra n.11.  If this argument is not premised on his sovereign-citizen status, the Court concludes that there is no procedural due process violation, as Gutierrez has not asserted, nor has the Court independently identified, any procedural irregularities that would result in a risk of erroneous deprivation attaining constitutional proportions.

("The affidavit must state with required particularity the identifying facts of time, place, persons, occasion, and circumstances."). Although Gutierrez' pleadings convey a sense that he thinks he will not receive justice in federal court, that is an insufficient basis for the Court to be disqualified. See United States v. Aston, 132 F.3d 43, 43 (10th Cir. 1997)(unpublished)("Defendant's affidavit contained only a conclusory assertion that he cannot receive justice in Utah, and, therefore, his petition seeking recusal of the district court judge is insufficient as a matter of law.").

Under 28 U.S.C. § 455, "disqualification is appropriate only where the reasonable person, were he to know all the circumstances, would harbor doubts about the judge's impartiality." Mathis v. Huff & Puff Trucking, Inc., 787 F.3d 1297, 1310 (10th Cir. 2015). "The reasonable observer is not the judge or even someone familiar with the judicial system, but rather, an average member of the public." Mathis v. Huff & Puff Trucking, Inc., 787 F.3d at 1310. "There is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to so when there is." Hinman v. Rogers, 831 F.2d at 938. Again, Gutierrez does not state why the Court must recuse itself; from what the Court can gather, Gutierrez bases this argument on his perception that the entire United States judicial system is nothing more than a collection of kangaroo courts.[14] Those general contentions alone are insufficient to demonstrate that the Court must be disqualified under 28 U.S.C. § 455.[15] Gutierrez also argues the Court

---

[14]A kangaroo court is a "self-appointed tribunal or mock court in which the principles of law and justice are disregarded, perverted, or parodied." Black's Law Dictionary 409 (10th ed. 2009)("'Kangaroo' might refer to the illogical leaps between 'facts' and conclusions, or to the hapless defendant's quick bounce from court to gallows."). See Ridue v. Louisiana, 373 U.S. 723, 726 (1963).

[15]As a factual matter, the Court knows of no personal connection between the Court and the United States or Gutierrez such that it would give rise to disqualification. It also has no financial interest in the case's outcome. The Court supposes that, adopting a tax-protestor frame-

must be disqualified under 18 U.S.C. § 208 for having a pecuniary interest in the case, but that statute applies to executive branch employees, independent agency employees, and officers or employees of the District of Columbia and not to Article III judges or judicial employees.  <u>See</u> 18 U.S.C. § 208.  Accordingly, 18 U.S.C. § 208 is inoperative here.

Second, Gutierrez argues that, based on a quotation from <u>Penhallow v. Doane's Administrators</u>, 3 U.S. 54 (1795), governments can only "interface" with artificial persons, and thus, because he is not an artificial person, the United States cannot tax him.[16]  There is no such quotation in <u>Penhallow v. Doane's Administrators</u>,[17] and, even if there was, it would not provide the silver bullet to slay the United States Internal Revenue Service.  <u>Penhallow v. Doane's</u>

---

of-mind, an argument could be made that, because federal taxes fund the judiciary, the Court has a personal financial interest in adjudicating tax crimes.  The Tenth Circuit, however, has dismissed this line of reasoning in another tax protestor case.  <u>See</u> <u>Booth v. I.R.S.</u>, 1994 WL 563437, at *2 (10th Cir. 1994)(unpublished)("[A]ny remote or tenuous benefit he could potentially receive from a particular outcome in the case is outside the scope of 28 U.S.C. [§] 455.").  The Court rejects Gutierrez' argument accordingly.

[16]Gutierrez' full quote reads:

Inasmuch as every government is an artificial person, an abstraction, and a creature of the mind only, a government can interface only with other artificial persons.  The imaginary, having neither actuality nor substance, is foreclosed from creating and attaining parity with the tangible.  The legal manifestation of this is that no government, as well as any law, agency, aspect, court, etc. can concern itself with anything other than corporate, artificial persons and the contracts between them.

Second Motion Mem. at 11 (purporting to quote <u>Penhallow v. Doane's Administration</u>, 3 U.S. 54 (1795)).

[17]The Court has previously noted that such a quotation does not exist in <u>Penhallow v. Doane's Administrator's</u>, <u>see</u> <u>United States v. Heijnen</u>, 375 F. Supp. 2d 1229, 1231 (D.N.M. 2005)(Browning, J.), and it has been unable to find the quotation that Gutierrez references in any other Supreme Court or Tenth Circuit opinion.

Administrators is about federal courts' jurisdiction in prize cases,[18] and it has nothing to do with taxation. See Penhallow v. Doane's Administrators, 3 U.S. at 62, 76-77. Moreover, the case predates the Sixteenth Amendment by over a hundred years, so, even if the case had precluded an income tax, that holding would have been overruled.

Third, Gutierrez argues that a court may not label an argument frivolous without first involving a jury or without a separate trial about whether the matter is frivolous. See Reply at 4. The Court disagrees, because matters proper for a trial on the merits involve evidence relevant to the question of guilt. See United States v. Pope, 613 F.3d 1255, 1259 (10th Cir. 2010). Frivolity, in contrast, has nothing to do with evidence of a party's guilt, but with the quality of a party's legal arguments. The Court concludes, accordingly, that a trial on the merits about the frivolity of Gutierrez' arguments is unnecessary. Cf. Lonsdale v. United States, 919 F.2d at 1442, 1448 (concluding that tax protestor arguments were frivolous on a motion to dismiss).

Fourth, Gutierrez contends that the case raises political questions beyond the Court's jurisdiction. See Reply at 3-4. This case is, however, a run-of-the-mill tax evasion prosecution, which falls squarely within the judiciary's province, so does not implicate the political question doctrine. See Zivotofsky ex rel. Zivotofsky v. Clinton, 566 U.S. 189, 195 (2012); Baker v. Carr, 369 U.S. 186, 210 (1962)("The nonjusticiability of a political question is primarily a function of the separation of powers."). This argument, thus, also lacks merit.

Fifth, Gutierrez argues that the Court must dismiss the Indictment, because the Court did not respond to the Motion within thirty days. See Default Notice at 1, 3. Rule 12(d) of the

---

[18]Prize law governs who has the right to captured property during wartime, such as when a party captures an enemy vessel on the high seas. See 28 U.S.C. § 1333(2); The Prize Cases, 67 U.S. 635, 636-37 (1862). The Court has never had the opportunity to apply prize law, given the infrequent vessel captures in New Mexico. This is not the Court's lucky day, however, because Penhallow v. Doane's Administrators is inapplicable here.

Federal Rules of Criminal Procedure governs the timeliness of courts' pretrial rulings, and it provides that a court must "decide every pretrial motion before trial." Fed. R. Crim. P. 12(d). Accordingly, the Court was not required to respond to Gutierrez' Motion within thirty days, and, here, the Court issued an oral ruling before trial, so it satisfied rule 12(d). See Tr. at 4:12-5:10 (Court); id. at 5:25-6:12 (Court); id. at 7:4-25 (Court, Gutierrez).[19]

Sixth, and finally, Gutierrez asserts that the United States Attorney and the Assistant United States Attorneys on this case must submit to him an affirmation under penalty of perjury that they provided truthful and complete information to the Grand Jury, including information about his tax protestor arguments. See Challenge Motion at 7. Gutierrez is not entitled to such an affirmation, as prosecutors are sworn to secrecy about matters occurring before the Grand Jury. See Fed. R. Crim. P. 6(e)(2)(B)(vi). The Court may authorize a disclosure on a Grand-Jury matter, "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury," but the Court declines to authorize such a disclosure here, because Gutierrez notes that he does not request this affirmation based on a belief that the indictment is defective. See Challenge Motion at 7.

With Gutierrez' arguments resolved, the Court turns to the United States' Motion, which requests that the Court strike the Default Notice and the Challenge Motion. See United States' Motion at 1-4. The United States argues that, because Gutierrez has counsel, the Court should strike Gutierrez' filings that his counsel did not join. See United States' Motion at 1-2. To support that proposition, the United States asserts that Gutierrez has no right to hybrid representation -- that is, to sometimes proceed pro se and sometimes have counsel. See United

---

[19]This argument also seems to be premised on Gutierrez' assertion that he is a sovereign citizen. Accordingly, Gutierrez believes that the Court must abide Gutierrez' rules of criminal procedure. To the extent that this argument is premised on Gutierrez' sovereignty, it fails for the additional reason that Gutierrez is not a sovereign. See supra n.11.

States' Motion at 1-2 (citing United States v. Hill, 526 F.2d at 1025).  That defendants do not have a right to hybrid representation does "not foreclose a trial judge from allowing hybrid representation in appropriate cases."  United States v. Hill, 526 F.2d at 1025.  Here, the Court indicated to Gutierrez that it would not close the courthouse doors on him, see Tr. at 8:16-9:5 (Court); id. at 10:23-11:3 (Court), which Gutierrez interpreted as an invitation and an opportunity to file his arguments pro se.  The Court will not strike Gutierrez' pleadings, merely because he filed papers pro se after the Court's representation.

The United States' second contention is that the Court should strike the pleadings, because Gutierrez filed them after the Court's scheduling order deadline.  See United States' Motion at 2.  The Scheduling Order requires Gutierrez to file all notices and pretrial motions by June 17, 2016.  See Order to Continue Jury Trial and Motions Deadline at 4, filed March 10, 2016 (Doc. 18)("Scheduling Order").  Gutierrez filed the Default Notice and the Challenge Motion on July 27, 2016, and August 9, 2016 respectively -- both out of time.  See Default Notice at 1; Challenge Motion at 1.  The Court notes that the Default Notice and the Challenge Motion question the Court's jurisdiction, and attacks on the Court's jurisdiction "may be made at any time while the case is pending."  Fed. R. Crim. P. 12(b)(2).  While the Court concludes that Gutierrez' jurisdictional arguments are frivolous, it is mindful that a district court always should be careful of overstepping its jurisdictional bounds, so it will not strike either pleading as untimely.  The United States finally asserts that the Court should deny the relief requested in the Default Notice and the Challenge Motion, because the arguments therein are frivolous and lack merit.  See United States' Motion at 2-4.  For the reasons stated above, see supra at 22-28, the Court agrees.

**IT IS ORDERED** that: (i) the requests in the Defendant's Pro Se Notice of Challenge to Jurisdiction, filed May 31, 2016 (Doc. 21), are denied; (ii) the requests in Defendant's Notice of Default, filed July 27, 2016 (Doc. 25), are denied; (iii) the requests in the Defendant's Notice of Challenge to the Court's Conduct and Memorandum of Law, filed August 9, 2016 (Doc. 26), are denied; and (iv) the United State[s'] Motion to Strike or to Deny Whatever Relief is Requested in Docket Entries 26 and 27, filed August 12, 2016 (Doc. 28), is granted in part and denied in part. The Court denies Plaintiff United States' request that the Court strike the Default Notice and the Challenge Motion. The Court grants, however the United States' Motion to deny Gutierrez' requests for relief that are in the Default Notice and the Challenge Motion.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

John C. Anderson
    United States Attorney
Reeve L. Swainston
Holland S. Kastrin
Margaret M. Vierbuchen
    Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

        *Attorneys for the Plaintiff*

Jason Bowles
Bowles Law Firm
Albuquerque, New Mexico

        *Attorney for the Defendant*