# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                    No. CR 15-3955 JB

DARRYL J. GUTIERREZ,

        Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** come before the Court on: (i) the Defendant Darryl J. Gutierrez' Motion for Instruction on Willfulness and Good Faith Element and For Production of Grand Jury Transcript, filed February 17, 2017 (Doc. 57)("Motion"); (ii) the Plaintiff United States of America's Motion *In Limine* to Exclude Defendant's Self-Serving Declarations as Inadmissible Hearsay, filed March 8, 2017 (Doc. 61)("Motion in Limine"); and (iii) Defendant Darryl Gutierrez's Brief in Support of Objection to Deliberate Ignorance Jury Instruction, filed March 28, 2017 (Doc. 82)("Trial Brief").  The Court held a hearing on March 13, 2017 regarding the Motion, a hearing regarding the Motion in Limine on March 22, 2017, and heard oral argument regarding the Trial Brief during trial on March 28, 2017 and March 29, 2017.  The primary issues are: (i) whether Gutierrez is entitled to willfulness and good-faith instructions for 26 U.S.C. § 7206(1) offenses that Counts Two through Eleven of the Indictment charge; (ii) whether the Court should instruct the jury that "corruptly" for purposes of 26 U.S.C. § 7212(a) means that the defendant acted knowingly and dishonestly with the specific intent to subvert or undermine the due administration of the revenue laws; (iii) whether the Court should give a deliberate-ignorance instruction for Count 1; (iv) whether the United States must provide,

before trial, Grand Jury transcripts to Gutierrez, so that Gutierrez can challenge the Indictment before trial; and (v) whether the Court should exclude as inadmissible hearsay statements that Gutierrez made that express his disagreements with the United States' tax laws.

The Court concludes that, under United States Court of Appeals for the Tenth Circuit precedent, Gutierrez is entitled to a willfulness instruction and also a good faith instruction, but only the latter if Gutierrez testifies at trial. Similarly, Tenth Circuit caselaw indicates that corruptly is properly defined above. The Court concludes that a willful blindness instruction is inappropriate, because the evidence adduced at trial demonstrates that Gutierrez did not try to avoid learning that his tax-evasion strategies were criminal. Rather, Gutierrez knew that those strategies were criminal, but employed them anyway. The United States does not need to produce Grand Jury transcripts to Gutierrez expect as to what the Jencks Act, 18 U.S.C. § 3500, Brady v. Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972), require, because Gutierrez has not shown that his transcript is anything more than a fishing expedition. Finally, the Court reserves the majority of its hearsay rulings, because Gutierrez has not identified specific statements for the Court to consider. It notes, however, that some of Gutierrez' statements about his tax beliefs may be admissible for purposes other than their truth, e.g., as circumstantial evidence regarding Gutierrez' mental state. The Court concludes, nevertheless, that statements Gutierrez made to Heather Howard -- a Department of Energy contractor -- during a security-clearance interview are not admissible under the rule of completeness. Accordingly, the Court: (i) grants the Motion in part and denies it in part; (ii) grants the Motion in Limine in part and denies it in part; and (iii) grants the requests in the Trial Brief.

## FACTUAL BACKGROUND

The Court takes its facts from the Indictment, filed November 5, 2015 (Doc. 2)("Indictment"). The Court does not set forth these facts as findings or the truth. The Court recognizes that the Indictment is largely the United States' version of events and that Gutierrez is presumed innocent.

From 2000 through 2009, Gutierrez filed federal income tax returns seeking tax refunds in the amount of $173,526.00. See Indictment ¶ 1, at 1. Gutierrez, however, was not entitled to that tax refund; instead, he owed $125,624.00 in federal taxes. See Indictment ¶ 1, at 1. Gutierrez also falsified his W-4 forms for many years seeking exemption from federal income tax withholding. See Indictment ¶¶ 11-15, at 2-3. He also falsified his 1040 forms from 2000 to 2009 by asserting that he had no wage income, whereas he had a wage income and knew of that wage income. See Indictment at 5-9. From 2011 through 2013, Gutierrez sent various notices to the Internal Revenue Service ("IRS") stating that he is not subject to federal income tax or liable for the penalties that the IRS assessed against him, because he is not a "taxpayer." Indictment ¶¶ 19-25, at 4-5.

## PROCEDURAL BACKGROUND

On November 5, 2015, a Grand Jury returned an eleven-count indictment against Gutierrez. See Indictment at 1-9. On December 2, 2015, Gutierrez was arrested and arraigned before the Honorable Steven C. Yarbrough, United States Magistrate Judge for the United States District Court for the District of New Mexico. See Clerk's Minutes before Magistrate Judge Steven C. Yarbrough at 1, filed December 2, 2015 (Doc. 5). He pled not guilty. See Clerk's

Minutes before Magistrate Judge Steven C. Yarbrough: Arraignment/Detention as to Darryl J Gutierrez at 1, filed December 3, 2015 (Doc. 9).

1.    **The Motion.**

Gutierrez argues that he is entitled to a jury instruction on willfulness and on good faith vis-à-vis the 26 U.S.C. § 7206(1) violations that Counts 2-11 charge.  See Motion at 1. According to Gutierrez, "as one of the specific elements of the crime," the United States must demonstrate "the specific intent of willfulness."  Motion at 2 (citing Cheek v. United States, 498 U.S. 192, 200-01 (1991)("Willfulness is a voluntary, intentional violation of a known legal duty.")).  He argues that, accordingly, he is also entitled to a "good faith" instruction, which "defeats the willfulness intent element."  Motion at 2.  Gutierrez contends that he will testify, "and present his good faith and genuinely held belief" that, for a variety of reasons, the United States cannot tax him.  Motion at 2-3.

Gutierrez also requests that the Court order the United States to produce Grand Jury transcripts, "so that Mr. Gutierrez may determine whether the government instructed the [grand] jury on the elements of willfulness and its corollary, good faith."  Motion at 6.  He also argues that the Court should order the United States to produce the Grand Jury transcripts "as early *Jencks* material," so that Gutierrez can challenge the indictment pre-trial.  Motion at 6.  Gutierrez contends that he "establishes a particularized need" for pretrial access to these transcripts, because, if he does not receive them before trial he will not be able to challenge the indictment on the ground that the United States improperly instructed the grand jurors on willfulness and on good faith, nor will Gutierrez be able to mount a statute of limitations defense for Count 1.  See Motion at 6-7 n.1.

2.      **The Response.**

The United States responds that it does not object to a willfulness instruction, nor does it object to a good faith instruction, "should the evidence at trial and the law support such an instruction." United States' Response to Defendant's Motion for Instruction on Willfulness and Good Faith Element and for Production of Grand Jury Transcript at 1, 3, filed March 3, 2017 (Doc. 58)("Response"). The United States notes that the Tenth Circuit pattern jury instruction for 26 U.S.C. § 7206(1) contains the willfulness instruction from <u>Cheek v. United States</u>, and that it would not object to that instruction. <u>See</u> Response at 4. <u>See also</u> <u>Cheek v. United States</u>, 498 U.S. at 200-01 (defining willfulness as a "voluntary, intentional violation of a known legal duty."). The United States mentions that the Supreme Court of the United States and the Tenth Circuit "have long recognized" that good faith negates the willful element in tax offenses. <u>See</u> Response at 4 (citing <u>United States v. Collins</u>, 920 F.2d 619, 622 (10th Cir, 1990)("[A] good faith misunderstanding of the duty to pay income taxes can negate the willfulness element.")). The United States remarks that it and Gutierrez appear to be in general agreement "as to the applicable legal principles," but it argues that the Motion should be denied as premature or held in abeyance until trial, because "if the defendant elects not testify, as is his constitutional right," the good faith instruction "becomes moot." Response at 5.

The United States also responds that Gutierrez is not entitled to the Grand Jury transcripts, for two reasons. <u>See</u> Response at 11. First, the United States contends that Gutierrez has not established a particularized need for those transcripts, because that Gutierrez alleges that he needs the transcripts to know if the United States properly instructed the Grand Jury on willfulness and on good faith, but does not provide evidence indicating that the Grand Jury's

instructions were improper.  See Response at 11-13 (citing Fed. R. Crim. P. 6(e)). The United

States adds that, even if there is an error in instructing the Grand Jury, that would not

"necessarily support a challenge to the indictment."  Response at 13 (citing United States v.

Buchanan, 787 F.2d 477, 487 (10th Cir. 1986)).  See United States v. Buchanan, 787 F.2d at 487

("Challenges only to the instructions given to the grand jury as to the elements of the offense are

not grounds for dismissal of an indictment that is valid on its face.").

Second, the United States argues that the Court should reject the other ground upon

which Gutierrez requests the transcripts -- as early Jencks material -- because the Jencks Act

requires disclosure only after a witness testifies on direct examination.  See Response at 14-15.

The United States asserts that a stunning amount of caselaw supports its position.  See Response

at 15.  The United States concludes, however, that it anticipates producing any Jencks material

before trial "to eliminate" delays, but will not produce such material until closer to trial.

Response at 15.[1]

   **3.     The March 13, 2017, Hearing**.

The Court held a hearing on March 13, 2017.   See Draft Transcript of Motion

Proceedings, at 1:1 (taken March 13, 2017)("March 13 Tr.").[2]   The Court began by asking the

United States whether it agrees that the Court should give a good-faith instruction if Gutierrez

testifies.  See March 13 Tr. at 3:1-3 (Court).  The United States agreed that, if Gutierrez'

testimony is as "robust" as he represents in his Motion, then the Court should give some form of

the good-faith instruction.  See March 13 Tr. at 3:9-10 (Vierbuchen).  Accordingly, the Court

---

[1]Gutierrez did not file a reply.

[2]The Court's citations to the hearing transcript refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

noted that, when it gives the jury preliminary instructions, it will instruct the jury that the United States must prove willfulness beyond a reasonable doubt, but that it will give a more in-depth willful definition before closings and that it will also give a good-faith instruction if testimony warrants it.  See March 13 Tr. at 4:14-24 (Court).  Gutierrez agreed to the Court's plan.  See March 13 Tr. at 4:25-5:1 (Bowles)("I think that's absolutely correct, your Honor.").

Turning to the Grand Jury transcripts, the Court asked the United States whether it plans to give all of the Grand Jury transcripts to Gutierrez or if it plans to keep portions of them confidential.  See March 13 Tr. at 6:1-5 (Court).  The United States replied that it will refrain from producing Grand Jury transcripts unless a Grand Jury witness testifies at trial.  See March 13 Tr. at 6:6-15 (Vierbuchen).  The Court then concluded that Gutierrez had not made the requisite showing for an early peek at the transcripts.  See March 13 Tr. at 6:16-7:3 (Court)("[I]t sounds like right at the moment you're fishing a little bit, and the law does not permit you to do it.").  Gutierrez agreed, see March 13 Tr. at 7:4-5 (Bowles)("Your Honor I think you're absolutely right."), but he argued that he was also entitled to the Grand Jury transcripts that contain exculpatory information even if the Grand Jury witness does not testify at trial, see March 13 Tr. at 7:17-21 (Bowles).  The United States agreed that it would need to produce that information under Brady v. Maryland.  See March 13 Tr. at 8:2 (Kastrin).

### 4.    The Motion in Limine.

The United States argues that the Court should preclude Gutierrez from introducing Gutierrez' out-of-court statements that express his disagreements with the United States' tax laws.  See Motion in Limine at 1-2.  According to the United States, such statements from Gutierrez are inadmissible hearsay.  See Motion in Limine at 2 (citing Fed. R. Evid. 801(c); Fed.

R. Evid. 802; United States v. Larsen, 175 F. App'x 236, 241 (10th Cir. 2006)(unpublished)). The United States contends that the Court should require Gutierrez to obtain an admissibility ruling outside of the jury's presence before "attempting to elicit testimony or otherwise introduce into evidence his own self-serving statements" under an exception to the rule against hearsay. Motion in Limine at 3.

The United States also contends that, if it chooses to introduce some of Gutierrez' statements during its case-in-chief, the United States will not be opening the door to all of Gutierrez statements under a rule-of-completeness argument. See Motion in Limine 3-4 (citing Fed. R. Evid. 106). The United States argues that the rule of completeness prevents litigants from misleading the jury by selective quotation, so the rule does not apply as long as the United States does not offer Gutierrez' statements in a misleading manner. See Motion in Limine at 4. The United States asserts that it may introduce "a limited number" of Gutierrez' statements to establish: (i) Gutierrez' awareness that the IRS believed that Gutierrez failed to file tax returns; (ii) that Gutierrez had not filed tax returns from 1994 through 2007; (iii) that Gutierrez' wages were garnished in 1997 to satisfy a 1993 tax debt; (iv) that Gutierrez paid some of his 2007 New Mexico state income tax; and (v) that Gutierrez claimed marriage and ten exemptions on his W-4. See Motion in Limine at 5. The United States argues that statements introduced to demonstrate those points are "discrete factual statements that are not misleading," so the rule of completeness does not require Gutierrez' additional statements to be introduced. See Motion in Limine at 5; id. ("There can be no doubt that the defendant's statements about his tax-law beliefs do not change the meaning of any discrete, factual statements that the United States intends to introduce."). The United States concludes by asking the Court to enter a pretrial order

prohibiting Gutierrez from introducing his own out-of-court statements and an order stating that, if Gutierrez seeks to introduce any of his out-of-court statements at trial that Gutierrez seek an admissibility ruling outside the jury's presence.  See Motion in Limine at 5-6.

5.      **Motion in Limine Response.**

Gutierrez responds that the Court should allow Gutierrez to testify about his out-of-court statements concerning his tax beliefs, because such statements are admissible under rule 803(3) of the Federal Rules of Evidence, and because they are admissible "in fairness" under the rule of completeness.   Response to Motion in *Limine* to Exclude Defendant's Declarations as Inadmissible Hearsay at 1, filed March 8, 2017 (Doc. 61)("Motion in Limine Response"). According to Gutierrez, his tax-belief statements are admissible because they are statements relating to his then existing state of mind.  See Motion in Limine Response at 2 (citing Fed. R. Evid. 803(3)).  Gutierrez argues, alternatively, that such statements are admissible if the United States "opens the door to a topic" by introducing Gutierrez' statements.  Motion in Limine Response at 3.  He contends that, if the United States introduces statements that Gutierrez made to a National Nuclear Security Administration contractor, Gutierrez' tax-law belief statements must be admitted, in fairness, because they "change everything about the meaning of the factual statements" that the United States intends to introduce.  Motion in Limine Response at 4. Finally, Gutierrez argues that rule 403 of the Federal Rule of Evidence supports his rule-of-completeness argument, because, barring introduction of his tax-belief statements, yet allowing the United States to enter the other statements, would substantially prejudice him.  See Motion in Limine Response at 5.

6. **Motion in Limine Reply.**

The United States replies that Gutierrez' rule 803(3) argument fails, because rule 803(3) does not apply to statements about belief.  See United States' Reply in Support of its Motion *In Limine* to Exclude Defendant's Self-Serving Declarations as Inadmissible Hearsay at 1-2, filed March 17, 2017 (Doc. 68)("Motion in Limine Reply")(citing Fed. R. Evid. 803(3)("The following are not excluded by the rule against hearsay: . . . [a] statement of declarant's then-exiting statement of mind . . . , but not including a statement of memory or belief to prove the fact remembered or believed.").  The United States argues that rule 803(3)'s exception is premised on the circumstantial guarantees of trustworthiness attendant to statements that reflect a then existing mental, emotional, or physical condition, but such guarantees are absent when statements of belief are at issue, because they lack spontaneity.  See Motion in Limine Reply at 3-4 (citing United States v. Taylor, 991 F.2d 797, 1993 WL 94319, at *3 (6th Cir. 1993) (unpublished)).  The United States also argues that Gutierrez' statements of belief cannot be introduced via rule 803(3) as an "intent to perform a certain unspecified act in the future," unless he shows that he performed the act that his statements suggest he intended to perform.  Motion in Limine Reply at 5-6.

The United States also argues that the rule of completeness does not make Gutierrez' tax-belief statements admissible, because Gutierrez' statements do not contextualize any of the statements which the United States intends to introduce.  See Motion in Limine Reply at 6-7.  In support of that contention, the United States argues that Gutierrez' tax-belief statements would not contextualize the statements the United States intends to introduce that Gutierrez was aware that he was the subject of a state tax investigation.  See Motion in Limine Reply at 8; id.

("Similarly, his tax beliefs do not change the meaning of his admission that he had not paid federal taxes since 1994."). The United States adds that "[t]he fact that the defendant had an alleged explanation for why he did not file his taxes does not change the fact that he did not file them." Motion in Limine Reply at 8.

The United States also argues that there is no indicia of trustworthiness surrounding Gutierrez' tax-belief statements, because they "are entirely subjective" and Gutierrez "had plenty of incentive to provide answers that would mitigate his conduct," as Gutierrez' security clearance was at risk. Motion in Limine Reply at 9. Thus, according to the United States, admitting Gutierrez' statements does not serve rule 106's purposes, because, instead of clarifying the statements that the United States elicits, they will mislead the jury. See Motion in Limine Reply at 9.

The United States concludes that Gutierrez' invocation of rule 403 fails, because that rule applies only if the statements are otherwise admissible. See Motion in Limine Reply at 10. The United States argues that, because rules 106 and 803(3) do not make Gutierrez' tax-belief statements admissible, rule 403 does not apply. See Motion in Limine Reply at 10. The United States argues, however, that, if the Court were to conclude that Gutierrez' tax-belief statements are admissible, rule 403 "favors exclusion of his statement," because they would "confuse the issues, and mislead the jury" about the case's applicable law. Motion in Limine Reply at 10. The United States concludes, accordingly, that the Court should exclude Gutierrez' tax-belief statements. See Motion in Limine Reply at 10.

## 7.     **The March 22, 2017, Hearing**.

The Court held a hearing on March 22, 2017, about the Motion in Limine.  See Draft Transcript of Motion Proceedings at 2:1 (taken March 22, 2017)(Court)("March 22 Tr.").[3]  The Court opened by noting that it is inclined to grant the Motion in Limine.  See March 22 Tr. at 3:23-24 (Court); id. at 3:24-4:1 (Court)("I know you know this Mr. Bowles, you can't sit there and have other witnesses tell Mr. Gutierrez' story through their mo[uths].").  The Court noted that there might be some statements that Gutierrez could introduce through rule 803(3), but that it will resolve those statements if they arise at trial.  See March 22 Tr. at 4:4-25 (Court).  It also noted its inclination that the rule of completeness would not allow Gutierrez to sneak in his statements if he did not take the stand.  See March 22 Tr. at 4:15-17 (Court).

The United States agreed with the Court's assessment, but argued that none of Gutierrez' tax belief statements are admissible under rule 803(3).  See March 22 Tr. at 5:18-24 (Kastrin). The United States contended that, in general, Gutierrez' statements are statements of belief, so rule 803(3) does not apply.  See March 22 Tr. at 9:2-6 (Kastrin).  It also argued that there are no statements of Gutierrez' intention to do something where Gutierrez later acted in conformity with that intention.  See March 22 Tr. at 10:11-17 (Kastrin).

Gutierrez rejoined that the Court should allow Gutierrez to introduce his statements about his tax beliefs, because they are or are very likely to be relevant.  See March 22 Tr. at 13:19-14:2 (Bowles).  He concedes, however, that Gutierrez might have to testify for the Court to admit his statements and other documents reflecting his tax beliefs.  See March 22 Tr. at 14:8-9 (Bowles). Gutierrez contends that whether he intended to obstruct the administration of the revenue laws is

---

[3]The Court's citations to the hearing transcript refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

at issue, so his tax beliefs are relevant.  See March 22 Tr. at 15:10-15 (Bowles).  Gutierrez agreed with the Court, however, that the best way to approach these statements is to approach the Court when it intended to introduce them at trial.  See March 22 Tr. at 16:1-19 (Court, Bowles).

The United States argued that, even if Gutierrez testifies, the statements would still be inadmissible hearsay.  See March 22 Tr. at 18:19-22 (Kastrin).  The United States also contended that admitting Gutierrez' beliefs would confuse the jury about the applicable law, so the Court should exclude them under rule 403.  See March 22 Tr. at 19:10-18 (Kastrin).  The Court asked the United States whether it thinks Gutierrez' statements were relevant for a good-faith defense. See March 22 Tr. at 19:25-20:4 (Court).  The United States argued that Gutierrez might not even qualify for a good faith defense.  See March 22 Tr. at 20:5-8 (Kastrin)("[I]t really depends on how he phrases what his beliefs [are].").  The United States represented that the good-faith instruction for which it would ask would be that Gutierrez lacks the requisite intent if he has a good-faith belief or holds the mistaken belief that his actions comply with the tax laws, but a disagreement about the tax laws' scope does not relieve Gutierrez from criminal liability.  See March 22 Tr. at 20:14-20 (Kastrin).  The United States also argued that Gutierrez' tax-law beliefs changed over time, so the United States represented that they may attack his belief's sincerity at trial.  See March 22 Tr. at 21:4-11 (Kastrin).  The Court responded that, if the United States challenges the sincerity of Gutierrez' tax beliefs, it will allow Gutierrez' statements to come in -- provided that Gutierrez testifies -- but that it will bar the testimony if the United States does not challenge Gutierrez' sincerity.  See March 22 Tr. at 24:22-25:7 (Court)("[I]t's a phantom issue [if] they're letting [it] go to the jury the fact that he's had and has always said this.").

8.      **The Jury Instruction Requests.**

The United States requests the Court's final jury instructions to define acting "corruptly," under 26 U.S.C. § 7212(a), as "to act with the intent to secure an unlawful advantage or benefit either for oneself or for another."  United States Jury Instructions at 24-25, filed March 17, 2017 (Doc. 67)("Instruction Request")(citing United States v. Thompson, 518 F.3d 832 (10th Cir. 2008); United States v. Dowell, 430 F.3d 1100, 1110 (10th Cir. 2005)).  The United States also requests a jury instruction that: "[K]nowledge can be inferred if the defendant deliberately blinded himself to the existence of a fact.  Knowledge can be inferred if the defendant was aware of a high probability of the existence of [the fact in question], unless the defendant did not actually believe [the fact in question]."  Instruction Request at 31 (citing Tenth Circuit Pattern Jury Instructions Criminal 1.37 (2011))(alterations and underlining in Instruction Request).

Gutierrez responds that the Court should more precisely define "corruptly" as "act[ing] knowingly and dishonestly, with the specific intent to subvert or undermine the due administration of justice."  Defendant's Objections to United States' Proposed Voir Dire and Requested Jury Instructions at 2, filed March 20, 2017 (Doc. 70)(citing Tenth Circuit Pattern Jury Instruction Criminal  2.62 (2011))("Instruction Request Response").  He also contends that the United States' "willful blindness" -- sometimes called deliberate ignorance -- instruction is inappropriate, because that instruction "in general [is] discouraged."  Instruction Request Response at 2 (citing United States v. Delreal-Ordones, 213 F.3d 1263, 1268 (10th Cir. 2000)).

The United States replies that Gutierrez' definition comes from pattern instructions on a different statute -- 18 U.S.C. § 1503(a) -- so that definition is inappropriate.  See United States' Response to Defendant's Objections to the United States' Proposed Voir Dire & Jury Instruction

at 2, filed March 21, 2017 (Doc. 71)("Instruction Request Reply").  The United States also argues that its proposed instruction is more appropriate, because the Tenth Circuit and the Court has used its definition previously.  <u>See</u> Instruction Request Reply at 2 (citing <u>United States v. Winchell</u>, 129 F.3d 1093, 1098 (10th Cir. 1997); <u>United States v. Williamson</u>, 2013 WL 1658021, at *18 (D.N.M. March 20, 2013)(Browning, J.)).  The United States also argues its deliberate-ignorance instruction is appropriate, because the Tenth Circuit has approved its use in tax cases.  <u>See</u> Instruction Request Reply at 3 (citing <u>United States v. Sorenson</u>, 801 F.3d 1217, 1233-35 (10th Cir. 2015)).

The Court signaled that it was inclined to adopt at trial the United States' definition of corruptly.  <u>See</u> Draft Transcript of Trial Proceedings, at 71:5-10 (taken March 28, 2017)(Court)("March 28 Trial Tr.")[4]("I'm sort of inclined to think that there are so[] many Tenth Circuit cases that approve the language that the Government has proposed that I'll do it.").  The Court also reasoned that, if it adopts the United States' definition, there will be no "knowingly" in any instruction, so the deliberate-ignorance instruction can be omitted.  March 28 Trial Tr. at 71:10-19 (Court).  The United States responded that there is caselaw where deliberate ignorance is also a component of willfulness.  <u>See</u> March 28 Trial Tr. at 72:11-20 (Kastrin).

**9.      <u>The Trial Brief</u>.**

Gutierrez argues that the Tenth Circuit has twice approved 26 U.S.C. § 7212(a) instructions containing no knowledge or deliberate-ignorance instruction, so the Court's proposal to omit knowledge and the deliberate-ignorance instruction is proper.  <u>See</u> Trial Brief at 1. Gutierrez argues that, independent of that caselaw, the Court should not give a deliberate-

---

[4]The Court's citations to the hearing transcript refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

ignorance instruction, because such an instruction is proper only when there is trial evidence that a defendant purposefully avoided learning facts so that he may have a defense in a subsequent prosecution. See Trial Brief at 1. According to Gutierrez, the United States has not given any such evidence. See Trial Brief at 1-2. He argues that the "best" evidence that the United States has provided is that "Mr. Gutierrez attempted to avoid certain unspecified letters." Trial Brief at 2. He adds that, in contrast, there has been an overwhelming amount of evidence that Gutierrez received notice of the IRS' correspondence. See Trial Brief at 2 ("The overall picture that has been painted is not that Mr. Gutierrez blinded himself to the correspondence, but that he received much of it and stamped a lot of it with his own objections."). Gutierrez also asserts that the Court should refrain from giving the deliberate-ignorance instruction, because it is rarely given, and usually given only when "the defendant denies knowledge of an operative fact," but the evidence "demonstrates or creates the inference that the defendant deliberately avoided actual knowledge of that fact." Trial Brief at 2.

The Court heard argument again at trial on the jury instructions. See Draft Transcript of Trial Proceedings at 40:9 (taken March 29, 2017)(Court)("March 29 Trial Tr.").[5] The Court noted that, contrary to Gutierrez' position, the Tenth Circuit has recently required a knowing instruction with 26 U.S.C. § 7212(a), but that it agrees with Gutierrez that the United States' case did not demonstrate that Gutierrez had willfully blinded himself. See March 29 Trial Tr. at 40:9-41:22 (Court)("[H]e's not blinding himself. He's purposely doing things to show his disagreement with the law."). The United States argued that the deliberate-ignorance instruction is still proper even though it has shown actual knowledge, because Tenth Circuit caselaw has

_____

[5]The Court's citations to the hearing transcript refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

allowed such instructions.  See March 29 Trial Tr. at 43:8-14 (Kastrin)(citing United States v. Espinoza, 244 F.3d 1234 (10th Cir. 2001)).  The United States added that a deliberate-ignorance instruction is proper both for the 26 U.S.C. § 7212(a) charge, but also for the 26 U.S.C. § 7206(1) charges.  See March 29 Trial Tr. at 139:15-21 (Kastrin).  It argued that there is trial evidence of deliberate ignorance, because Gutierrez sent back letters to the IRS without reading them.  See March 29 Trial Tr. at 141:21-142:1 (Kastrin)("That's deliberate avoidance.").  Gutierrez responded that the letters which Gutierrez sent back are letters sent in 2013 -- two years after the corrupt acts in Counts 2-11 of the Indictment.  See March 29 Trial at 150:23-151:5 (Bowles).  Gutierrez acknowledges that Count 1 has acts in 2013, but he argues that the cases that the United States cites to argue that a deliberate-ignorance instruction is proper are not relevant to 26 U.S.C. § 7212(a).  See March 29 Trial Tr. at 151:5-14 (Bowles).  Gutierrez argues that they are not relevant to 26 U.S.C. § 7212(a), because the mental state at issue for 26 U.S.C. § 7212(a) occurred before Gutierrez received the notices from the IRS.  See March 29 Trial Tr. at 151:14-20 (Bowles).  He also contended that a deliberate-ignorance instruction is more properly attached with a knowledge instruction and not a willfulness instruction, because willfulness is about good faith whereas knowledge is about mental state.  See March 29 Trial Tr. at 153:8-19 (Bowles).

## LAW REGARDING THE UNITED STATES' DUTY TO DISCLOSE IN CRIMINAL CASES

The United States' duty to disclose in criminal cases arises from at least three sources: (i) rule 16 of the Federal Rules of Criminal Procedure; (ii) the Due Process Clause of the Fifth Amendment to the Constitution of the United States of America; and (iii) the Jencks Act.  Put roughly, rule 16 requires the United States to disclose items material to the defense, items it

intends to use in its case-in-chief, and items it obtained from the defendant.  See Fed. R. Crim. P.

16.  The Due Process Clause requires the United States to furnish information in its possession

that is favorable to the accused.  Finally, the Jencks Act requires the United States to disclose

states that its witnesses made if those statements are in the United States' possession and relate to

those witnesses' trial testimony, after those witnesses have testified at trial.

### 1.     Rule 16.

Rule 16 of the Federal Rules of Criminal Procedure provides:

Upon a defendant's request, the government must permit the defendant to inspect
and to copy or photograph books, papers, documents, data, photographs, tangible
objects, buildings or places, or copies or portions of any of these items, if the item
is within the government's possession, custody, or control and:

(i)      the item is material to preparing the defense;

(ii)     the government intends to use the item in its case-in-chief at trial; or

(iii)    the item was obtained from or belongs to the defendant.

Fed. R. Crim. P. 16(a)(1)(E).   Under a standard Order used in the District of New Mexico,

"[u]nless the defendant has filed [a specified] waiver, within eight days of the entry of this Order,

the Government shall provide to defendant's counsel without motion all of the information to

which defendant is entitled pursuant to Rule 16."  Order at 1-2, filed March 14, 2014 (Doc. 8).

Criminal defendants may not, however, embark on a "broad or blind fishing expedition among

documents possessed by the Government."   Jencks v. United States, 353 U.S. 657, 667

(1957)(quoting Gordon v. United States, 344 U.S. 414, 419 (1953)).  Rule 16(a)(2) provides, in

part, that rule 16 "does not authorize the discovery or inspection of reports, memoranda, or other

internal government documents made by an attorney for the government or other government

agent in connection with investigating or prosecuting the case."  Fed. R. Crim. P. 16(a)(2).  The

Supreme Court of the United States has interpreted the term "defense" in this statute as referring to "an argument in response to the prosecution's case in chief."  United States v. Armstrong, 517 U.S. 456, 462 (1996)("[W]e conclude that in the context of Rule 16 'the defendant's defense' means the defendant's response to the Government's case in chief.").  Additionally, rule 16 does not require the United States to produce "reports, memoranda, or other internal government documents. . . [or] statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500."  Fed. R. Crim. P. 16 (a)(2).

**2.      Due Process Clause.**

"The Due Process Clause of the Constitution requires the United States to disclose information favorable to the accused that is material to either guilt or to punishment."  United States v. Padilla, 2011 WL 1103876, at *5 (D.N.M. 2011)(Browning, J.).  In Brady v. Maryland, the Supreme Court explained that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  Brady v. Maryland, 373 U.S. 83, 87 (1963).  In Giglio v. United States, 405 U.S. 150 (1972), the Supreme Court extended the prosecution's disclosure obligation to evidence that is useful to the defense in impeaching government witnesses, even if the evidence is not inherently exculpatory.  See 405 U.S. at 153; United States v. Torres, 569 F.3d 1277, 1282 (10th Cir. 2009)("Impeachment evidence is considered exculpatory for Brady purposes."); Douglas v. Workman, 560 F.3d 1156, 1172-73 (10th Cir. 2009)("[N]o distinction is recognized between evidence that exculpates a defendant and 'evidence that the defense might have used to impeach the [United States'] witnesses by showing bias and interest.'" (quoting United States v. Bagley, 473 U.S. 667, 676

- 19 -

(1985))); <u>United States v. Abello-Silva</u>, 948 F.2d 1168, 1179 (10th Cir. 1991)("Impeachment evidence merits the same constitutional treatment as exculpatory evidence.").   Finally, the Supreme Court has refined <u>Brady v. Maryland</u> and clarified that it is not necessary that a defendant request exculpatory evidence; "[R]egardless of request, favorable evidence is material, and constitutional error results from its suppression by the government 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'"   <u>Kyles v. Whitley</u>, 514 U.S. 419, 433 (1995)(quoting <u>United States v. Bagley</u>, 473 U.S. at 682).   See <u>Douglas v. Workman</u>, 560 F.3d at 1172 ("The government's obligation to disclose exculpatory evidence does not turn on an accused's request."); <u>United States v. Summers</u>, 414 F.3d 1287, 1304 (10th Cir. 2005)("[T]he prosecution has an affirmative duty to disclose exculpatory evidence clearly supporting a claim of innocence even without request.").   "[T]he Due Process Clause does not require the government to disclose before trial the names of its witnesses, just so the defense can have sufficient time to investigate their backgrounds for impeachment information."   <u>United States v. Ashley</u>, 274 F. App'x 693, 697 (10th Cir. 2008)(unpublished).   See <u>Weatherford v. Bursey</u>, 429 U.S. 545, 559 (1977)("It does not follow from the prohibition against concealing evidence favorable to the accused that the prosecution must reveal before trial the names of all witnesses who will testify unfavorably."); <u>United States v. Harmon</u>, 871 F. Supp. 2d 1125, 1149 (D.N.M. 2012)(Browning, J.).

      a.      <u>**Timing of the Disclosure**</u>.

The prosecution's obligation to disclose evidence under <u>Brady v. Maryland</u> can vary depending on the phase of the criminal proceedings and the evidence at issue.   As a general matter, "[s]ome limitation on disclosure delay is necessary to protect the principles articulated in

Brady v. Maryland." United States v. Burke, 571 F.3d 1048, 1054 (10th Cir. 2009). The Tenth

Circuit has recognized that "[i]t would eviscerate the purpose of the Brady rule and encourage

gamesmanship were we to allow the government to postpone disclosures to the last minute,

during trial." United States v. Burke, 571 F.3d at 1054. "[T]he belated disclosure of

impeachment or exculpatory information favorable to the accused violates due process when an

'earlier disclosure would have created a reasonable doubt of guilt.'" United States v. Burke, 571

F.3d at 1054 (quoting United States v. Young, 45 F.3d 1405, 1408 (10th Cir. 1995)). The Tenth

Circuit has stated:

> Where the district court concludes that the government was dilatory in its
> compliance with Brady, to the prejudice of the defendant, the district court has
> discretion to determine an appropriate remedy, whether it be exclusion of the
> witness, limitations on the scope of permitted testimony, instructions to the jury,
> or even mistrial.

United States v. Burke, 571 F.3d at 1054. On the other hand, "not every delay in disclosure of

Brady material is necessarily prejudicial to the defense." United States v. Burke, 571 F.3d at

1056. "To justify imposition of a remedy, the defense must articulate to the district court the

reasons why the delay should be regarded as materially prejudicial." United States v. Burke, 571

F.3d at 1056. Courts should, "[w]hen assessing the materiality of Giglio information,

. . . consider the significance of the suppressed evidence in relation to the entire record." United

States v. Gonzalez-Montoya, 161 F.3d 643, 650 (10th Cir. 1998).

When a prosecutor's obligations under Brady v. Maryland are triggered, however, they

"continue[] throughout the judicial process." Douglas v. Workman, 560 F.3d at 1173. For

instance, the obligation to disclose material under Brady v. Maryland can arise during trial. See

United States v. Headman, 594 F.3d at 1183 (10th Cir. 2010)("Although Brady claims typically

arise from nondisclosure of facts that occurred before trial, they can be based on nondisclosure of favorable evidence (such as impeachment evidence) that is unavailable to the government until trial is underway."). Additionally, the disclosure obligation continues even while a case is on direct appeal. See United States v. Headman, 594 F.3d at 1183; Smith v. Roberts, 115 F.3d 818, 819, 820 (10th Cir. 1997)(applying Brady v. Maryland to an allegation that the prosecutor failed to disclose evidence received after trial but while the case was on direct appeal); United States v. Harry, 2013 WL 684671, at *5 (D.N.M. 2013)(Browning, J.).

        **b.**      **Material Exculpatory Evidence.**

The holding in Brady v. Maryland requires disclosure only of evidence that is both favorable to the accused, and "material either to guilt or to punishment." 373 U.S. at 87. "Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. at 682. See United States v. Allen, 603 F.3d 1202, 1215 (10th Cir. 2010). A "reasonable probability" is a "probability sufficient to undermine confidence in the outcome." United States v. Bagley, 473 U.S. at 682 (internal quotation marks omitted). The Tenth Circuit has noted that "[t]he mere possibility that evidence is exculpatory does not satisfy the constitutional materiality standard." United States v. Fleming, 19 F.3d 1325, 1331 (10th Cir. 1994). The Tenth Circuit has also found that "[d]uplicative impeachment evidence is not material." Douglas v. Workman, 560 F.3d at 1173. "To be material under Brady, undisclosed information or evidence acquired through that information must be admissible." Banks v. Reynolds, 54 F.3d 1508, 1521 n.34 (10th Cir. 1995)(quoting United States v. Kennedy, 890 F.2d 1056, 1059 (9th Cir. 1989)).

The burden is on the United States to produce exculpatory materials; the burden is not on the defendant to first point out that such materials exist. See Kyles v. Whitley, 514 U.S. at 437 (stating that the prosecution has an affirmative duty to disclose evidence, because "the prosecution, which alone can know what is undisclosed, must be assigned the consequent responsibility to gauge the likely net effect of all such evidence and make disclosure when the point of 'reasonable probability' is reached"); United States v. Deutsch, 475 F.2d 55, 57 (5th Cir. 1973)(granting a mistrial for failure to produce personnel files of government witnesses), overruled on other grounds by United States v. Henry, 749 F.2d 203 (5th Cir. 1984); United States v. Padilla, 2011 WL 1103876, at *6. The United States' good or bad faith is irrelevant. See Brady v. Maryland, 373 U.S. at 87; United States v. Quintana, 673 F.2d at 299 ("Under Brady, the good or bad faith of government agents is irrelevant."). "This means, naturally, that a prosecutor anxious about tacking too close to the wind will disclose a favorable piece of evidence." Kyles v. Whitley, 514 U.S. at 439. The United States has an obligation to "volunteer exculpatory evidence never requested, or requested only in a general way," although the obligation exists only "when suppression of the evidence would be of sufficient significance to result in the denial of the defendant's right to a fair trial." Kyles v. Whitley, 514 U.S. at 433 (internal quotation marks omitted). On the other hand, "[t]he Constitution, as interpreted in Brady, does not require the prosecution to divulge every possible shred of evidence that could conceivably benefit the defendant." Smith v. Sec'y of N.M. Dep't of Corr., 50 F.3d 801, 823 (10th Cir. 1995). Additionally, "[t]he constitution does not grant criminal defendants the right to embark on a broad or blind fishing expedition among documents possessed by the" United

States.  United States v. Mayes, 917 F.2d 457, 461 (10th Cir. 1990)(quoting Jencks v. United States, 353 U.S. at 667); United States v. Harry, 2013 WL 684671, at *8.

### c.   Evidence Must Be in the United States' Possession.

"It is well settled that there is no 'affirmative duty upon the government to take action to discover information which it does not possess.'"  United States v. Tierney, 947 F.2d 854, 864 (8th Cir. 1991)(quoting United States v. Beaver, 524 F.2d 963, 966 (5th Cir. 1975)).  Accord United States v. Kraemer, 810 F.2d 173, 178 (8th Cir. 1987)(explaining that the prosecution is not required "to search out exculpatory evidence for the defendant"); United States v. Badonie, No. CR 03-2062, 2005 WL 2312480, at *3 (D.N.M. Aug. 29, 2005)(Browning, J.).  On the other hand, "a prosecutor's office cannot get around Brady by keeping itself in ignorance, or by compartmentalizing information about different aspects of a case."  Carey v. Duckworth, 738 F.2d 875, 878 (7th Cir. 1984).  Under Brady v. Maryland, "[a] prosecutor must disclose information of which it has knowledge and access."  United States v. Padilla, 2011 WL 1103876, at *7 (citing United States v. Bryan, 868 F.2d 1032, 1037 (9th Cir. 1989)).  "A prosecutor may have a duty to search files maintained by other 'governmental agencies closely aligned with the prosecution' when there is 'some reasonable prospect or notice of finding exculpatory evidence.'"  United States v. Padilla, 2011 WL 1103876, at *7 (quoting United States v. Brooks, 966 F.2d 1500, 1503 (D.C. Cir. 1992)).  A prosecutor does not have a duty, however, to obtain evidence from third parties.  See United States v. Combs, 267 F.3d 1167, 1173 (10th Cir. 2001) (observing that Brady v. Maryland does not oblige the government to obtain evidence from third parties).  See also United States v. Huerta-Rodriguez, No. CR 09-3206, 2010 WL 3834061, at **4, 10 (D.N.M. Aug. 12, 2010)(Browning, J.)(noting that the United States cannot be

compelled to produce the New Mexico State Police officers' personnel files, because the New Mexico State Police, which was not a party to the case, possessed the files, and the United States was able to review the files only at the New Mexico State Police office, and could not remove or photocopy any documents without a subpoena); United States v. Badonie, 2005 WL 2312480, at *3 (denying a motion to compel because the New Mexico State Police possessed the documents, and the United States did not possess the documents, a defendant sought to be produced, even though the United States "could get the information [Defendant] Badonie seeks merely by requesting them"); United States v. Harry, 2013 WL 684671, at *8.

### 3. The Jencks Act.

In Jencks v. United States, the Supreme Court held that a "criminal action must be dismissed when the Government, on the ground of privilege, elects not to comply with an order to produce, for the accused's inspection and for admission in evidence, relevant statements or reports in its possession of government witnesses touching the subject matter of their testimony at trial." 353 U.S. at 672. In so holding, the Supreme Court recognized that the

> rationale of the criminal cases is that, since the Government which prosecutes an accused also has the duty to see that justice is done, it is unconscionable to allow it to undertake prosecution and then invoke its governmental privileges to deprive the accused of anything which might be material to his defense.

353 U.S. at 671. Congress later codified Jencks v. United States' holding in 18 U.S.C. § 3500. See United States v. Kimoto, 588 F.3d 464, 475 (7th Cir. 2009)(explaining that, "the Jencks Act, 18 U.S.C. § 3500[,] . . . was enacted in response to the Supreme Court's holding in Jencks v. United States, 353 U.S. 657 . . . ").

Section 3500 of Title 18 of the United States Code provides:

**(a)** In any criminal prosecution brought by the United States, no statement or

report in the possession of the United States which was made by a Government witness or prospective Government witness (other then the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

**(b)** After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

18 U.S.C. §§ 3500(a),(b). "The Jencks Act requires the government to disclose to criminal defendants any statement made by a government witness that is 'in the possession of the United States' once that witness has testified." United States v. Lujan, 530 F. Supp. 2d 1224, 1232 (D.N.M. 2008)(Brack, J.)(quoting 18 U.S.C. §§ 3500(a)-(b)). The Jencks Act "manifests the general statutory aim to restrict the use of such statements to impeachment." Palermo v. United States, 360 U.S. 343, 349 (1959). The Jencks Act's purpose is "not only to protect Government files from unwarranted disclosure but also to allow defendants materials usable for the purposes of impeachment." United States v. Smaldone, 544 F.2d 456, 460 (10th Cir.1976)(citing Palermo v. United States, 360 U.S. at 352). The Jencks Act defines statements specifically:

**(e)** The term "statement," as used in subsections (b), (c), and (d) of this section in relation to any witness called by the United States, means--

**(1)** a written statement made by said witness and signed or otherwise adopted or approved by him;

**(2)** a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or

**(3)** a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.

- 26 -

18 U.S.C. § 3500(e). The Tenth Circuit has held: "Interview notes could be 'statements' under the [Jencks] Act if they are substantially verbatim." United States v. Smith, 984 F.2d 1084, 1086 (10th Cir. 1993). At least one district court within the Tenth Circuit has distinguished interview notes from reports that "embody only the agent's epitomization, interpretation, or impression of an interview," finding that the latter are not producible under the Jencks Act. United States v. Jackson, 850 F. Supp. 1481, 1508 (D. Kan. 1994)(Crow, J.). In United States v. Lujan, the Honorable Robert C. Brack, United States District Judge for the District of New Mexico, explained that rough interview notes may be discoverable under the Jencks Act when a defendant makes "at least . . . a colorable claim that an investigator's discarded rough notes contained exculpatory evidence not included in any formal interview report provided to the defense." 530 F. Supp. 2d at 1266. Judge Brack went on to hold that, "[b]ecause the contents of rough interview notes may in some cases be subject to disclosure and because the potential impeachment value of the notes may not become evident until trial," the United States must preserve its rough interview notes "made by law enforcement agents during interview of potential witnesses" under 18 U.S.C. § 3500. 530 F. Supp. 2d at 1267. See United States v. Cooper, 283 F. Supp. 2d 1215, 1238 (D. Kan. 2003)(Crow, J.)(noting that rough interview notes may be discoverable under the Jencks Act); United States v. Jackson, 850 F. Supp. at 1508-09 (finding that interview notes may be producible under the Jencks Act).

The defendant bears the initial burden of showing that particular materials qualify under the Jencks Act, but the defendant's burden is not heavy. See United States v. Smaldone, 544 F.2d at 460 ("[T]he burden is on the defendant to show that particular materials qualify as 'Statements' and that they relate to the subject matter of the testimony of the witness."). To

satisfy this burden, the defendant need not prove that particular materials are within the Jencks Act's scope, as the documents are not in the defendant's possession, but, rather, "must plainly tender to the Court the question of the producibility of the document at a time when it is possible for the Court to order it produced, or to make an appropriate inquiry." United States v. Smith, 984 F.2d at 1086 (quoting Ogden v. United States, 303 F.2d 724, 733 (9th Cir. 1962)). The defendant's demand for documents under the Jencks Act must be sufficiently precise for a court to identify the requested statements. See United States v. Smith, 984 F.2d at 1086. For example, in United States v. Smith, the Tenth Circuit concluded that a defendant had met his burden and made a prima facie showing that a statement of a witness existed which may be producible under the Jencks Act when a government witness testified during the United States' case-in-chief that a government agent had interviewed her before testifying, and the defense counsel moved for production of the notes. See 984 F.2d at 1085-86. Once the defendant makes a prima facie showing that a witness statement exists which may be producible under the Jencks Act, the court should conduct a hearing or in camera review of the statement. United States v. Smith, 984 F.2d at 1086.

The Court has applied the Jencks Act to Drug Enforcement Agency agents' notes, generated from interviews with defendants, holding that the notes must be disclosed to the defendants after the agents testify at trial. See United States v. Goxcon-Chagal, No. CR 11-2002, 2012 WL 3249473, at **2, 6 (D.N.M. Aug. 4, 2012)(Browning, J.). In United States v. Tarango, 760 F. Supp. 2d 1163 (D.N.M. 2009)(Browning, J.), the Court, applying 18 U.S.C. § 3500, held that the United States must produce FBI agents' 302s, after the United States' witnesses testified at trial, to the extent those reports contains statements from witnesses who

testified at trial.  See 760 F. Supp. 2d at 1164, 1167; United States v. Harry, 2013 WL 684671, at *11.

## LAW REGARDING GRAND JURY TRANSCRIPTS

In recognition of the Grand Jury's status as an independent institution, courts afford Grand Jury proceedings a presumption of regularity.  See United States v. Johnson, 319 U.S. 503, 512-13 (1943).  "This presumption attaches even after the grand jury has returned an initial indictment. After all, superseding indictments setting forth new charges or adding new defendants are familiar fare."  United States v. Flemmi, 245 F.3d 24, 28 (1st Cir. 2001).  A "'grand jury proceeding is accorded a presumption of regularity, which generally may be dispelled only upon particularized proof of irregularities in the grand jury process.'"  United States v. R. Enters., Inc., 498 U.S. 292, 301 (1991)(quoting United States v. Mechanik, 475 U.S. 66, 75 (1986)(O'Connor, J., concurring)).  To be entitled to production, the defendant must show a "particularized need" for the documents that outweighs the public policy of grand jury secrecy. United States v. Warren, 747 F.2d 1339, 1347 (10th Cir. 1984).  The particularized need requirement, however, is not satisfied when a party attempts to engage in a fishing expedition in the hopes of discovering useful material.  See United States v. Kim, 577 F.2d 473, 478 (9th Cir. 1978).  "A simple desire for the grand jury transcripts in the unsubstantiated hope that something might turn up is insufficient to require disclosure."  United States v. Battle, 1997 WL 447814, at *18 (D. Kan. June 27, 1997)(Crow, J.).

In Douglas Oil. Co. v. Petrol Stops Northwest, 441 U.S. 211 (1979), the Supreme Court sets forth the standard for reviewing whether grand jury transcripts should be produced:

> Parties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding,

that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed. Such a showing must be made even when the grand jury whose transcripts are sought has concluded its operations. . . . For in considering the effects of disclosure on grand jury proceedings, the courts must consider not only the immediate effects upon a particular grand jury, but also the possible effect upon the functioning of future grand juries. . . . [T]he interests in grand jury secrecy, although reduced, are not eliminated merely because the grand jury has ended its activities.

Douglas Oil, Co. v. Petrol Stops Northwest, 411 U.S. at 222 (footnotes omitted).

"Despite the strong policy of maintaining the secrecy of grand jury proceedings, in certain situations disclosure of grand jury minutes and transcripts is appropriate where justice demands." United States v. Pottorf, 769 F. Supp. 1176, 1180 (D. Kan. 1991)(Saffels, J.). The decision whether the district court should release grand jury transcripts is committed to the district court's sound discretion. See In re Lynde, 922 F.2d 1448, 1451 (10th Cir. 1991).

"The rule is as exacting when the defendant asks for the protected materials in order to challenge the propriety of the grand jury proceedings." United States v. Battle, 1997 WL 447814, at *18. "Before disclosure of the grand jury transcripts, which would corroborate the Defendants' arguments[,] can be ordered, the Defendants must offer evidence of a 'substantial likelihood of gross or prejudicial irregularities in the conduct of the grand jury.'" United States v. Cannistraro, 800 F. Supp. 30, 50 (D.N.J. 1992)(Lechner, J.)(quoting United States v. Budzanoski, 462 F.2d 443, 454 (3d Cir. 1972)). Mere speculation over what may have occurred is not enough to meet this burden or to overcome the presumption of regularity attached to grand jury proceedings. See United States v. Santoro, 647 F. Supp. 153, 172-73 (E.D.N.Y. 1986)(McLaughlin, J.), rev'd on other grounds, United States v. Davidoff, 845 F.2d 1151 (2d Cir. 1988).

"Notwithstanding the presumption of regularity, prosecutors do not have carte blanche in grand jury matters." United States v. Flemmi, 245 F.3d at 28. "However, a party asserting a claim of grand jury abuse must shoulder a heavy burden. One way to carry this burden is to show that the government used the grand jury principally to prepare pending charges for trial." United States v. Flemmi, 245 F.3d at 28. The United States may not use the Grand Jury solely to bolster its case, "although this may be an incidental benefit." United States v. Gibbons, 607 F.2d 1320, 1328 (10th Cir. 1979)("[I]t is improper to use the grand jury for the primary purpose of strengthening the Government's case on a pending indictment or as a substitute for discovery."). "However, where there is another legitimate purpose behind the grand jury investigation, the proceeding would not be improper merely because the Government may derive an incidental benefit." United States v. Gibbons, 607 F.2d at 1328 (holding that the defendant did not show an abuse of the Grand Jury system, because he did "not demonstrate[] that [a witness'] testimony before the grand jury was for the sole or dominant purpose of preparing a pending indictment for trial"). Accord United States v. Woods, 544 F.2d 242 (6th Cir. 1976)("[S]o long as it is not the sole or dominant purpose of the grand jury to discover facts relating to (a defendant's) pending indictment, the Court may not interfere with the grand jury's investigation.").

These propositions are more simply stated than applied. See United States v. Flemmi, 245 F.3d at 28. In United States v. Flemmi, the United States Court of Appeals for the First Circuit recognized that

> there is a fine line between an improper 'trial preparation' use of a grand jury and a proper 'continuing investigation' use. This fine line is difficult to plot and, in most instances, determining whether a prosecutor has overstepped it will depend on the facts and circumstances of the particular case.

To assist in the inquiry, courts have devised certain proxies. Thus, if a grand jury's continuing indagation results in the indictment of parties not previously charged, the presumption of regularity generally persists. *United States v. Gibbons*, 607 F.2d 1320, 1328-29 (10th Cir.1979). So too when the grand jury's investigation leads to the filing of additional charges against previously indicted defendants. *In re Grand Jury Proceedings (Johanson)*, 632 F.2d 1033, 1041 (3d Cir. 1980). These are purposes befitting the accepted institutional objectives of the grand jury, and their presence bears convincing witness to the propriety of the prosecutor's stewardship. *See United States v. Sasso*, 59 F.3d 341, 351-52 (2d Cir. 1995); *In re Maury Santiago*, 533 F.2d 727, 730 (1st Cir. 1976); *United States v. Dardi*, 330 F.2d 316, 336 (2d Cir. 1964).

United States v. Flemmi, 245 F.3d at 28.

## **LAW REGARDING THE RULE OF COMPLETENESS**

Rule 106 -- otherwise known as the rule of completeness -- states:

If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part -- or any other writing or recorded statement -- that in fairness ought to be considered at the same time.

Fed. R. Evid. 106. By allowing the other party to present the remainder of the writing or recorded statement immediately rather than later on cross-examination, this rule avoids the situation where a statement taken out of context "creates such prejudice that it is impossible to repair by a subsequent presentation of additional material." Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 171 n.14 (1988). Accord United States v. Cruz-Calixto, 39 F. App'x 565, 567 (9th Cir. 2002)(unpublished); United States v. Oseby, 148 F.3d 1016, 1025 (8th Cir. 1998)("The advisory committee notes to Rule 106 state that one of the considerations for this rule is to avoid the misleading impression created by taking matters out of context."); United States v. Rubin, 609 F.2d 51, 63 (2d Cir. 1979)("The notes had been used extensively and quoted from copiously by Rubin's counsel on his cross-examination of Cox, possibly leaving a confusing or misleading impression that the portions quoted out of context were typical of the balance."); United States v.

Young, 2010 WL 1461558, at *3 (D. Me. Apr. 9, 2010)(Woodcock, J.). "Rule 106 by its terms does not apply to oral conversations, but only to writings and recorded statements." United States v. Christy, 2011 WL 5223024, at *3 (citing Fed. R. Evid. 106). The Tenth Circuit has stated: "The rule of completeness, however, does not necessarily require admission of [an entire statement, writing or recording]. Rather, only those portions which are relevant to an issue in the case and necessary 'to clarify or explain the portion already received' need to be admitted." United States v. Lopez-Medina, 596 F.3d 716, 735 (10th Cir. 2010). The United States Court of Appeals for the Seventh Circuit has applied a four-part test to determine whether to allow evidence under rule 106: "(1) does [the evidence] explain the admitted evidence, (2) does it place the admitted evidence in context, (3) will admitting it avoid misleading the trier of fact, and (4) will admitting it insure a fair and impartial understanding of all of the evidence." United States v. Velasco, 953 F.2d 1467, 1475 (7th Cir. 1992). Discussing the rule of completeness, the United District Court for the Central District of California provided guidance on when a related statement should be admitted to rebut a misleading impression:

> The Rule of Completeness "does not compel admission of otherwise inadmissible hearsay evidence." However, the Rule of Completeness was designed to prevent the Government from offering a "misleadingly-tailored snippet." The Rule of Completeness warrants admission of statements in their entirety when the Government introduces only a portion of inextricably intertwined statements.
>
> Statements are inextricably intertwined when the meaning of a statement, if divorced from the context provided by the other statement, is different than the meaning the statement has when read within the context provided by the other statement. Under those circumstances, a court must take care to avoid distortion or misrepresentation of the speaker's meaning, by requiring that the statements be admitted in their entirety and allowing the jury to determine their meaning.

United States v. Castro-Cabrera, 534 F. Supp. 2d 1156, 1160 (C.D. Cal. 2008)(Pregerson, J.). Accord United States v. Coughlin, 821 F. Supp. 2d 8, 30 (D.D.C. 2011)(Lamberth, C.J.)

("Coughlin is correct, however, that regardless of whether this evidence is inadmissible hearsay or not, he can introduce it under the rule of completeness."); United States v. Peeples, 2003 WL 57030, at *3 (N.D. Ill. Jan. 7, 2003)(Guzman, J.).

A related concept to the rule of completeness is the principle that, "[w]hen a party opens the door to a topic, the admission of rebuttal evidence on that topic becomes permissible." Tanberg v. Sholtis, 401 F.3d 1151, 1166 (10th Cir. 2005). "Permissible does not mean mandatory, however; the decision to admit or exclude rebuttal testimony remains within the trial court's sound discretion." Tanberg v. Sholtis, 401 F.3d at 1166. This principle reflects the general proposition that "[c]ross examination may embrace any matter germane to the direct examination, qualifying or destroying, or tending to elucidate, modify, explain, contradict, or rebut testimony given in chief by the witness." United States v. Burch, 153 F.3d 1140, 1144 (10th Cir. 1998). "[W]hether or not rebuttal evidence is admissible depends on whether the initial proof might affect the case and whether the rebuttal evidence fairly meets the initial proof." Richie v. Mullin, 417 F.3d 1117, 1138 (10th Cir. 2005)(alteration in original). The Tenth Circuit has recognized that, when the rebuttal evidence is "otherwise inadmissible," it must both: (i) "be reasonably tailored to the evidence it seeks to refute"; and (ii) "[t]here must be a nexus between the purported rebuttal evidence and the evidence that the purported rebuttal evidence seeks to rebut." Richie v. Mullin, 417 F.3d at 1138 (quoting United States v. Stitt, 250 F.3d 878, 897 (4th Cir. 2001)). In a case where a wife was seeking damages for loss of companionship in the context of an excessive force claim, the Tenth Circuit stated that the wife's claim for damages opened the door to evidence of the deceased husband's prior domestic abuse conviction and arrest. See Lounds v. Torres, 217 F. App'x 755, 758 (10th Cir.

2007)(unpublished)("[E]vidence of Alford's 2002 conviction and 2003 arrest for domestic abuse of Ms. Fuston-Lounds was offered not to show his character, but for the proper purpose of rebutting Ms. Fuston-Lounds' claim for damages.").

## LAW REGARDING HEARSAY

"Hearsay testimony is generally inadmissible." United States v. Christy, 2011 WL 5223024, at *5 (D.N.M. 2011)(Browning, J.)(citing Fed. R. Evid. 802). Under rule 801(c) of the Federal Rules of Evidence, "hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Hearsay bars a party from presenting its own statements, such as "a defendant . . . attempt[ing] to introduce an exculpatory statement made at the time of his arrest without subjecting himself to cross-examination." United States v. Cunningham, 194 F.3d 1186, 1199 (11th Cir. 1999)(Carnes, J.). A statement that is otherwise hearsay, however, may be offered for a permissible purpose other than to prove the truth of the matter asserted, including impeaching a witness. See United States v. Caraway, 534 F.3d 1290, 1299 (10th Cir. 2008)(Hartz, J.)("We have already explained why the content of the statement, if used substantively, would be inadmissible hearsay. If admitted for impeachment purposes, however, it is not hearsay."). Rule 805 of the Federal Rules of Evidence recognizes that "[h]earsay within hearsay" -- commonly referred to as double hearsay -- may be admissible "if each part of the combined statements conforms with an exception to the rule." Fed. R. Evid. 805.

1.     **Rule 803(3).**

One of the hearsay exceptions -- rule 803(3) -- excepts from the general bar on hearsay "[a] statement of the declarant's then existing state of mind [or] emotion." Fed. R. Evid. 803(3).

Rule 803(3) permits the introduction of "hearsay . . . , even though the declarant is available as a witness," for a statement of the declarant's "[t]hen existing mental, emotional, or physical condition":

> A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

Fed. R. Evid. 803(3).

For the statement to qualify under the exception, it "must relate to the declarant's state of mind during" the incident in question. United States v. Netschi, 511 F. App'x. 58, 61 (2d Cir. 2013)("To admit statements of one's state of mind with regard to conduct that occurred . . . earlier as in this case would significantly erode the intended breadth of this hearsay exception.")(quoting United States v. Cardascia, 951 F.2d 474, 488 (2d Cir. 1991)). This requirement is not to say that the statement must be said at the very moment of the incident, but for intent to be proved, it must be "contemporaneous" to the act. Mutual Life Ins. Co. of New York v. Hillmon, 145 U.S. 285, 295 (1892). To be contemporaneous and therefore admissible under the present state of mind exception, a statement must be "part of a continuous mental process." United States v. Cardascia, 951 F.2d at 488. In addition to the requirements that the statement be contemporaneous to the incident at hand and relevant to the issues of the case, it must also be established that there was no opportunity for the declarant to "fabricate or to misrepresent his thoughts." United States v. Jackson, 780 F.2d 1305, 1315 (7th Cir. 1986)). The statements of intent must reveal information or details about the future, which has been contrasted with statements of memory, or looking back to the past. See Shepard v. United States,

290 U.S. 96, 104 (1933). When statements entail issues of looking into the past combined with other concerns, it can often be too confusing for a jury to extract, upsetting the balance of advantage, and ultimately making the evidence inadmissible. See Shepard v. United States, 290 U.S. at 104. "The most obvious risk of prejudice is that the jury will consider the hearsay statement not as proof of state of mind and the subsequent conduct of the declarant, but rather for the truth of the facts that are related in the statement." Stephen A. Saltzburg et al., Fed. Rules of Evidence Manual § 803.02, at 4-803 (11th ed. 2017).

### LAW REGARDING THE ADEQUACY OF THE JURY INSTRUCTIONS

The standard of review on appeal for timely challenges to a jury instruction is de novo, and the Tenth Circuit reviews the instructions "to determine whether, considering the instructions as a whole, the jury was misled." United States v. Winchell, 129 F.3d 1093, 1096 (10th Cir. 1997)(citing United States v. Smith, 13 F.3d 1421, 1424 (10th Cir. 1994)). The Tenth Circuit has stated that it will reverse only where there is substantial doubt the jury was fairly guided:

> If, as a whole, the instructions correctly state the law and provide the jury with an "intelligent, meaningful understanding of the applicable issues and standards," we will not reverse. *United States v. Laughlin*, 26 F.3d 1523, 1528 (10th Cir. 1994). In other words, reversal is not appropriate unless we have "substantial doubt that the jury was fairly guided." *United States v. Mullins*, 4 F.3d 898, 900 (10th Cir. 1993).

United States v. Winchell, 129 F.3d at 1096. In United States v. Winchell, the Tenth Circuit instructed that, rather than provide juries with a separate instruction about specific intent, the Tenth Circuit prefers district courts provide to juries instructions informing juries of the mens rea element for the particular offense and define each element clearly and accurately:

> [A]s we have previously noted, "instructing in terms of 'specific intent' has been disfavored by the courts because of the confusing and ambiguous nature of such an instruction." *Laughlin*, 26 F.3d at 1527 (citing *Liparota v. United States*, 471 U.S. 419, 433 n. 16 . . . (1985)). Instead, we have endorsed instructions which adequately "apprise the jury of the mens rea element of the offense," *id.* at 1527, and which "define each element of the offense clearly and accurately." *Id.* at 1528.

United States v. Winchell, 129 F.3d at 1096-97. "Even when the district court fails to include an element of the crime in the instruction (including a mens rea element), we still apply the harmless error rule." United States v. Sorensen, 801 F.3d 1217, 1229 (10th Cir. 2015).

Although "[a] defendant charged with a specific-intent, federal criminal tax offense can negate the element of willfulness necessary to prove the violation, thereby providing a defense to the conduct charged, if the defendant establishes that he or she sought in good faith to comply with the relevant law," United States v. Lindsay, 184 F.3d 1138, 1140 (10th Cir. 1999)(citing Cheek v. United States, 498 U.S. at 201), "a theory of defense instruction is required only if, without the instruction, the district court's instructions were erroneous or inadequate," United States v. Bowling, 619 F.3d 1175, 1183 (10th Cir. 2010)(quoting United States v. Williams, 403 F.3d 1188, 1195 (10th Cir. 2005)). "While a defendant is entitled to an instruction on his theory of defense where some evidence and the law supports the theory, such an instruction is not required if it would 'simply give the jury a clearer understanding of the issues.'" United States v. Bowling, 619 F.3d at 1183-84 (quoting United States v. Williams, 403 F.3d at 1195). The Tenth Circuit has held that a "separate good faith instruction [i]s not necessary" where an element of the crime with which the defendant is charged, and on which the jury is instructed, "'necessarily implies that there was no good faith.'" United States v. Bowling, 619 F.3d at 1184-85 (quoting United States v. Chavis, 461 F.3d 1201, 1209 n. 1 (10th Cir. 2006)). In United

States v. Bowling, a jury found the defendant guilty of bank fraud, a specific intent crime, and the Tenth Circuit initially reversed the defendant's conviction and remanded for a new trial, because the judge failed to include a separate good-faith defense instruction. See United States v. Bowling, 343 F. App'x 359, 364-367 (10th Cir. 2009)(unpublished). The Tenth Circuit reasoned that, while a theory-of-defense instruction is usually required only if the instructions otherwise are erroneous or inadequate, "[i]n fraud cases . . . we treat a defendant's request for a good faith instruction with some differences. A 'defendant is entitled to a good faith instruction when he has interposed the defense of good faith, has requested the instruction, and when there is sufficient evidence to support it.'" United States v. Bowling, 343 F. App'x at 364-365 (quoting United States v. Overholt, 307 F.3d 1231, 1247 (10th Cir. 2002)). The United States then filed a petition for rehearing en banc, asking the Tenth Circuit to review its holding in United States v. Hopkins, 744 F.2d 716 (10th Cir.1984), which requires an additional good-faith defense instruction if sufficient evidence supports the good-faith defense. The Tenth Circuit, sitting by panel, but circulating the opinion to all active members of the Tenth Circuit, granted the United States' request and overturned United States v. Hopkins. See United States v. Bowling, 2009 WL 6854970, at 1 n.* (10th Cir. Dec. 23, 2009). In United States v. Bowling, The Tenth Circuit explained its reasoning for departing from its decision in United States v. Hopkins requiring a separate good-faith defense instruction in bank fraud cases:

> [W]ith the unanimous concurrence of all our active judges, [] our prior decision in
> *United States v. Hopkins*, 744 F.2d 716 (10th Cir. 1984) (en banc) is overruled for
> two reasons. First, in the twenty-five years since we issued Hopkins, every one of
> our sister circuits has come to reject the idea that district courts must give a
> separate "good faith" jury instruction in fraud cases. As they have explained, and
> we agree, a separate good faith instruction is not necessary "because a finding of
> the intent to defraud . . . necessarily implies that there was no good faith." *United
> States v. Chavis*, 461 F.3d 1201, 1209 n.1 (10th Cir. 2006)(cataloguing the views

> of every other circuit). Second, while we indicated in Hopkins that failure to give
> a good faith instruction was per se reversible error, the Supreme Court has since
> explained that a "trial court's failure to instruct a jury on all of the statutory
> elements of an offense is subject to harmless-error analysis." *Mitchell v. Esparza*,
> 540 U.S. 12, 16 . . . (2003)(per curiam); *See also Neder v. United States*, 527 U.S.
> 1, 9 . . . (1999)("[A]n instruction that omits an element of the offense does not
> necessarily render a criminal trial fundamentally unfair or an unreliable vehicle
> for determining guilt or innocence."); Fed. R. Crim. P. 52(a).

2009 WL 6854970, at *1 n.*. The Tenth Circuit's holding in United States v. Bowling, 619 F.3d

at 1175, in which it concluded that the instructions provided the jury as to the defendant's charge

of bank fraud did not require an additional, separate good-faith defense instruction, was the

Tenth Circuit's first application of this new position in bank fraud cases.

## LAW REGARDING 26 U.S.C. § 7206(1)

> Any person who -- . . . willfully makes and subscribes any return,
> statement, or other document, which contains or is verified by a written
> declaration that it is made under the penalties of perjury which he does not believe
> to be true and correct as to every material matter . . . shall be guilty of a felony.

26 U.S.C. § 7206(1). To establish a 26 U.S.C. § 7206(1) violation, the United States must

demonstrate that (i) the defendant "did not believe that the return he signed under penalty of

perjury was true and correct as to every material matter"; and (ii) that the defendant "acted

willfully." United States v. Winchell, 129 F.3d 1093, 1096 (10th Cir. 1997)(concluding that 26

U.S.C. § 7206(1) is a specific intent crime, but noting that federal courts have disfavored a

separate specific intent instruction, because of potential juror confusion). Willfully in this

statute's context means "voluntary, intentional violation of a known legal duty." United States v.

Guidry, 199 F.3d 1150, 1156 (10th Cir. 1999)(citing Cheek v. United States, 498 U.S. at 200-

01. Defendants are not entitled to a separate instruction that "negligent conduct is not sufficient

to constitute willfulness." United States v. Guidry, 199 F.3d at 1156 (alterations omitted).

"[I]nformation is material under § 7206(1) if it is necessary in order that the taxpayer . . . compute his tax correctly." United States v. Winchell, 129 F.3d at 1098.

## LAW REGARDING 26 U.S.C. § 7212(a)

> Whoever corruptly or by force or threats of force . . . endeavors to intimidate or impede any officer or employee of the United States acting in an official capacity under this title, or in any other way corruptly or by force or threats of force . . . obstructs or impedes, or endeavors to obstruct or impeded, the due administration of this title," shall be guilty of a felony.

26 U.S.C. § 7212(a). "[T]o act corruptly means to act with the intent to secure an unlawful benefit either for oneself or for another." United States v. Winchell, 129 F.3d at 1098. See United States v. Sorensen, 801 F.3d 1217, 1225 (10th Cir. 2015).[6] "[A] taxpayer's filing of frivolous documents against IRS agents constitutes a corrupt endeavor if the taxpayer meant to . . . intimidate officers or agents of the [IRS] from collecting his just debt of taxes due." United States v. Winchell, 129 F.3d at 1099. The Tenth Circuit has upheld the following jury instruction for 26 U.S.C. § 7212(a): "To act corruptly is to act knowingly and dishonestly, with the specific intent to gain an unlawful advantage or benefit either for oneself or for another by subverting or undermining the due administration of the internal revenue laws." United States v. Sorensen, 801 F.3d at 1229-31. In instructing a jury, "unlawful" need not be separately defined for 26 U.S.C. § 7212(a). United States v. Williamson, 746 F.3d at 991.

To secure a conviction under 26 U.S.C. § 7212(a)'s omnibus clause -- the clause making it a felony to "corruptly or by force" to endeavor to "obstruct or impede, the due administration of this title" -- the United States must show, among other things, "that there is a nexus between

---

[6]The Tenth Circuit has repeatedly declined to decide whether "a conviction under § 7212(a) requires that the defendant knew that the advantage or benefit he sought was unlawful." United States v. Williamson, 746 F.3d 987, 992 (10th Cir. 2014); United States v. Sorensen, 801 F.3d at 1230.

the defendant's conduct and a particular administrative proceeding, such as an investigation, an audit, or other targeted administrative action." Marinello v. United States, 138 S. Ct. 1101, 1109 (2018). "The nexus requires a 'relationship in time, causation, or logic with the [administrative] proceeding.'" Marinello v. United States, 138 S. Ct. at 1109 (quoting United States v. Aguilar, 515 U.S. 593, 599 (1995)). A particular administrative proceeding is not "every act carried out by IRS employees in the course of their continuous, ubiquitous, and universally known administration of the tax code," and "does not include routine, day-to-day work carried out in the ordinary course by the IRS, such as the review of tax returns." Marinello v. United States, 138 S. Ct. at 1109-10. "In addition to satisfying this nexus requirement, the Government must show that the proceeding was pending at the time the defendant engaged in the obstructive conduct or, at the least, was then reasonably foreseeable by the defendant." Marinello v. United States, 138 S. Ct. at 1110.

## ANALYSIS

The Court concludes that, under Tenth Circuit precedent, Gutierrez is entitled to a willfulness instruction and also a good faith instruction, but only the latter if evidence at trial warrants it. Because Gutierrez testified that he researched the tax laws and concluded from that research that wage income was not taxable income means that there is sufficient trial evidence to warrant a good-faith instruction The Court's instruction that "to act 'corruptly' is to act knowingly and dishonestly, with the specific intent to gain an unlawful advantage or benefit either for oneself or for another by subverting or undermining the due administration of the internal revenue laws" is justified given existing Tenth Circuit caselaw ratifying such language. See United States v. Sorenson, 801 F.3d at 1229. The Court concludes that a willful blindness

instruction is inappropriate, because the trial evidence demonstrates that Gutierrez did not try to avoid learning that his tax avoidance was criminal. Rather, Gutierrez knew that tax avoidance was criminal, but avoided paying taxes despite that knowledge. The United States does not need to produce Grand Jury transcripts to Gutierrez beyond what the United States must produce under the Jencks Act, 18 U.S.C. § 3500, Brady v. Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972), because Gutierrez has not proffered any evidence to justify his request. Finally, without specific statements proffered by Gutierrez to consider, the Court will withhold its hearsay rulings. It notes, however, that some of Gutierrez historic statements about his tax-law beliefs may be admissible for a non-hearsay purpose. The Court concludes, however, that the rule of completeness does not allow Gutierrez to introduce his statements made to Heather Howard during his interview with her about his security clearance.

I.      **GUTIERREZ IS ENTITLED TO WILLFULNESS AND GOOD FAITH INSTRUCTIONS FOR COUNTS 2-11 OF THE INDICTMENT.**

Gutierrez is entitled to a willfulness instruction regarding the 26 U.S.C. § 7206(1) violations with which he is charged because willfulness is the mens rea element for that crime. Evidence adduced at trial indicates that Gutierrez is also entitled to a good-faith instruction. Specifically, Gutierrez' testimony that he researched the tax laws and concluded from that research that wage income was not taxable income is justifies a good-faith instruction.

A.      **A WILLFULNESS INSTRUCTION IS PROPER.**

Gutierrez requests a willfulness instruction for the charges against him under 26 U.S.C. § 7206(1).[7] The Court concludes that he is entitled to such an instruction, because the statute's

---

[7]The United States does not object to a willfulness instruction if it tracks the language from Cheek v. United States. See Response at 4.

terms and Tenth Circuit precedent indicate that the instruction is proper. 26 U.S.C. § 7206(1)

reads:

> Any person who -- . . . <u>willfully</u> makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury which he does not believe to be true and correct as to every material matter . . . shall be guilty of a felony.

26 U.S.C. § 7206(1) (emphasis added). The Tenth Circuit has concluded that an instruction

telling a jury that 26 U.S.C. § 7206(1)'s "willfully" means "voluntarily and intentionally violate

a known legal duty" is an instruction that "clearly state[s] the correct legal standard." <u>United

States v. Guidry</u>, 199 F.3d at 1156 (affirming a district court's determination to give a willful

instruction for 26 U.S.C. § 7206(1)). <u>See</u> <u>Cheek v. United States</u>, 498 U.S. at 200-01 (holding

that willfulness means "a voluntary, intentional violation of a known legal duty"). Accordingly,

the Court may properly give the jury a willfulness instruction.[8]

### B. GUTIERREZ IS ENTITLED TO A GOOD-FAITH INSTRUCTION, BECAUSE THE EVIDENCE AT TRIAL JUSTIFIES SUCH AN INSTRUCTION.

Gutierrez is entitled to a good-faith instruction. "A defendant charged with a specific-

intent, federal criminal tax offense can negate the element of willfulness . . . if the defendant

establishes that he or she sought in good faith to comply with the relevant law." <u>United States v.

Lindsay</u>, 184 F.3d at 1140 (citing <u>Cheek v. United States</u>, 498 U.S. at 201). 26 U.S.C. § 7206(1)

---

[8]The instruction that the Court ultimately gave largely tracks the Tenth Circuit's approved language. <u>See</u> Court's Final Jury Instructions, Instruction No. 11, at 18, filed March 29, 2017 (Doc. 88)("To find Mr. Gutierrez guilty . . . you must be convinced that the government has proved . . . [that] Mr. Gutierrez acted willfully, that is, with the voluntary intent to violate a known legal duty.")(citing Criminal Pattern Jury Instructions Committee of the United States Court of Appeals for the Tenth Circuit, § 2.93, at 301 (2011)(updated January 2017)).

is a specific intent, federal criminal tax offense.  See United States v. Winchell, 129 F.3d at 1096.

"[A] person's opinion that the tax laws violate his constitutional right does not constitute a good faith misunderstanding of the law."  United States v. Lindsay, 184 F.3d at 1141.  Likewise, "a person's disagreement with the government's tax collection system and policies does not constitute a good faith misunderstanding of the law."  United States v. Lindsay, 184 F.3d at 1141.  Good faith exists, however, "if the defendant actually believe[s] that what he [i]s doing [i]s in accord with the tax statutes."  United States v. Boyd, 378 F. App'x 841, 849-50 (10th Cir. 2010)(unpublished)("A good faith belief is one which is honestly and genuinely held, even if wrong.").  See United States v. Collins, 920 F.2d 61at 622-23.  Gutierrez is "entitled to an instruction on his theory of defense where some evidence and the law supports the theory." United States v. Bowling, 619 F.3d at 1183-84.  When a reasonable juror could conclude from the evidence that Gutierrez acted in good faith, a good-faith instruction is proper.  See United States v. Bowling, 343 F. App'x 359, 367 (10th Cir. 2009)(unpublished); United States v. Bowling, 619 F.3d at 1184 ("As we held in our previous decision, Bowling presented sufficient evidence to support his good faith theory.").

Here, there is some evidence from which a reasonable juror could conclude that Gutierrez sincerely believes that he filed his tax returns in accordance with the tax laws, so the Court's good-faith instruction is proper.[9]  Gutierrez testified that, after researching Supreme Court cases

_____

[9]The Court's final jury instruction on good-faith reads:

Mr. Gutierrez did not act willfully if he believed in good faith that he was acting within the law or that his actions comply with the law.  A good faith belief is one which is honestly and genuinely held.  Therefore, if Mr. Gutierrez actually

that defined income as "gain or profit that's derived from your compensation for labor," he concluded that income means, loosely, capital gains, and therefore his wages are not income. See March 29 Tr. at 52:20-21 (Gutierrez); id. at 57:9-58:9 (Gutierrez); March 29 Tr. at 53:17-23 (Gutierrez).

> You go to work, you get your paycheck at the end of the day or a week, whatever it may be, that's your compensation for labor. That [paycheck] is not gain or profit. If you took a portion of your compensation for labor, and invested in property, and over a span of time you sold it you made a gain of profit, hopefully you did, then that is considered income and taxable.

March 29 Tr. at 54:7-16 (Gutierrez).

> Q. So are you saying your belief as to income or wages is like a capital gain? . . .

---

believed that what he was doing was in accord with the tax statutes, he cannot be said to have the criminal intent to subscribe to a false income tax return. A belief need not be objectively reasonable to be held in good faith. However, you may consider the objective reasonableness of Mr. Gutierrez' stated beliefs, along with other evidence, in determining whether Mr. Gutierrez' stated beliefs were honestly or genuinely held.

A defendant's good faith belief or misunderstanding of the law, however, must be distinguished from a defendant who understands the duty imposed on him by the law but disagrees with the law or as unconstitutional. Neither a disagreement with the requirements of the law, nor a belief that the tax laws are unconstitutional -- no matter how earnestly held -- constitute a defense of good faith. A disagreement with the Internal Revenue Code or a belief that the law should be other than what it is, no matter how earnestly believed, is not a defense and does not negate willfulness. It is the duty of all citizens to obey the law, whether they agree with it or not.

Good faith is not a defense if the government has proved beyond a reasonable doubt that Mr. Gutierrez knowingly used false representations or pretenses with intent to deceive in connection with the conduct described in Counts Two through Eleven.

Court's Final Jury Instructions, Instruction No. 12, at 20, filed March 29, 2017 (Doc. 88)(citing Instruction Request at 29-30; Cheek v. United States, 498 U.S. at 201; United States v. Collins, 920 F.2d at 622-23; United States v. Boyd, 378 F. App'x at 849-50).

A. Exactly.

. . . .

Q. And are you saying, are you telling the jury you do not believe income means your wages from your job?

A. Yes. I believe that income . . . is gain or profit. It is not my compensation for my labor.

March 29 Tr. at 54:17-55:2 (Bowles, Gutierrez). From that evidence, a reasonable juror could conclude that Gutierrez "actually believed" that the tax returns he filed, in which Gutierrez did not list his wage income, "are in accord with the tax statutes." United States v. Boyd, 378 F. App'x at 849-50.

To be sure, the United States attacked whether Gutierrez' sincerely holds that belief. For example, it elicited testimony that Gutierrez knows that a New Mexico district court and the Court of Appeals of New Mexico rejected some of Gutierrez' tax arguments in 2001, see March 29 Tr. at 75:15-78:16 (Gutierrez, Vierbuchen); id. at 81:13-82:3 (Gutierrez, Vierbuchen), which would tend to show that Gutierrez did not sincerely believe when he filed his returns in 2010 and 2011 that he did not need to list his wage income on his tax returns; rather, he simply disagreed with the law. A reasonable juror can still plausibly conclude, however, that Gutierrez still sincerely believes he does not need to list his wages as income on his returns, because his previous lawsuit was premised on a different legal theory. His theory in the earlier case was that the revocation and rescission of his social security number exempted him from federal income tax withholding. See March 29 Tr. at 77:16-78:4 (Gutierrez, Vierbuchen); id. at 83:25-84:9 (Gutierrez, Vierbuchen). Gutierrez' stated belief at trial, in contrast, is that the Supreme Court of the United States has determined that wages are not income. See March 29 Tr. at 87:24-88:1

(Gutierrez)("Like I said, it started with the understanding of the word income and built from there."). Thus, that a judge had previously ruled against him does not mean that a judge has discredited his currently stated belief. A reasonable juror can therefore still plausibly conclude that Gutierrez held a sincere belief that he did not need to report his wages on his return.[10]

The United States attacked Gutierrez' stated belief in other ways as well. Among other things, it elicited testimony that Gutierrez had not fully read the Supreme Court opinion upon which he relied, Lucas v. Earl, 281 U.S. 111 (1930). March 29 Tr. at 89:18-19 (Vierbuchen, Gutierrez). It also elicited testimony that Gutierrez never consulted a lawyer about his tax theory. See March 29 Tr. at 90:25-91:1 (Vierbuchen, Gutierrez). Although those attacks cast doubt on the objective reasonableness of his belief -- and perhaps on whether Gutierrez' expressed beliefs are sincere -- they do not mean that a reasonable juror could not reasonably conclude that Gutierrez holds the belief. Accordingly, a good-faith instruction is justified.

---

[10]In that earlier case, Gutierrez raised another argument; namely that he is not an employee as the Internal Revenue Code defines it. See March 29 Tr. at 84:20-85:5 (Gutierrez, Vierbuchen). The Court of Appeals of New Mexico rejected that argument, too. See March 29 Tr. at 84:20-85:11 (Vierbuchen, Gutierrez). Gutierrez' raises a similar theory at trial why he does not list his wages as income; in short, he believes that employees are defined as an "officer or elected official of the United States, or an officer of a corporation," so employee income taxes do not apply to him, because he is none of those things. March 29 Tr. at 59:22-61:2 (Gutierrez).

Although Gutierrez may have known that the Court of Appeals of New Mexico had discredited that belief, a reasonable juror can still conclude that Gutierrez holds a sincere belief that he does not need to report his wage earnings. Gutierrez' income-means-capital-gains theory and his employee-does-not-mean-him theory are separate arguments that happen to lead to the same conclusion. Both are paths that could plausibly lead Gutierrez to believe that he does not need to report his wages as taxable income. That his employee-does-not-mean-him theory is false does not mean that his income-means-capital-gains theory cannot be true. Thus, that Gutierrez knows that the Court of Appeals of New Mexico discredited one theory does not mean that he knows his other theory is false. A reasonable juror could, therefore, conclude that Gutierrez holds a sincere belief that he does not need to report his wages on his return.

**II. THE COURT MAY PROPERLY INSTRUCT THE JURY THAT "CORRUPTLY," UNDER 26 U.S.C. § 7212(a), MEANS THAT THE DEFENDANT ACTED KNOWINGLY AND DISHONESTLY WITH THE SPECIFIC INTENT TO GAIN AN UNLAWFUL ADVANTAGE OR BENEFIT EITHER FOR ONESELF OR FOR ANOTHER BY SUBVERTING OR UNDERMINING THE DUE ADMINISTRATION OF THE INTERNAL REVENUE LAWS.**

The United States' and Gutierrez' definitions of "corruptly" under 26 U.S.C. § 7212(a) diverge. The United States wants the Court to define corruptly as "to act with intent to secure an unlawful advantage or benefit for oneself or for another." Instruction Request at 24. Gutierrez asks the Court to define corruptly as to act "knowingly and dishonestly, with the specific intent to subvert or undermine the due administration of justice." Instruction Request Response at 2. The Court adopts the majority of Gutierrez' definition, but adds some language from the United States' proposed instruction, as the Tenth Circuit has approved of such a combined instruction.[11]

The Tenth Circuit has had many opportunities to define 26 U.S.C. § 7212(a)'s use of "corruptly." In United States v. Winchell, the Tenth Circuit explained that corruptly, under § 7212(a) "means to act with the intent to secure an unlawful benefit either for oneself or for another." United States v. Winchell, 129 F.3d at 1098 (citing, among others, United States v. Valenti, 121 F.3d 327, 331 (7th Cir. 1997)). The Tenth Circuit recently repeated this definition of "corruptly" in United States v. Sorensen, 801 F.3d 1217 (10th Cir. 2015). There, the Tenth Circuit noted that "the federal appellate courts have agreed (although with some insignificant

---

[11]The Court's final jury instruction reads: "To act 'corruptly' is to act knowingly and dishonestly, with the specific intent to gain an unlawful advantage or benefit either for oneself or for another by subverting or undermining the due administration of the internal revenue laws." Court's Final Jury Instructions, Instruction No. 8, at 14, filed March 29, 2017 (Doc. 88)(citing United States v. Thompson, 518 F.3d 832 (10th Cir. 2008); United States v. Dowell, 430 F.3d 1100, 1110 (10th Cir. 2005)(modified); Criminal Pattern Jury Instructions Committee of the United States Court of Appeals for the Tenth Circuit, § 2.62, at 197 (2011)(updated January 2017)(modified)).

variations in language) on the definition of *corruptly* . . . : To act 'corruptly' is to act with intent to gain an unlawful advantage or benefit either for oneself or for another." United States v. Sorensen, 801 F.3d at 1225 (emphasis in original)(citing United States v. Williamson, 746 F.3d 987, 992 (10th Cir. 2014); United States v. Winchell, 129 F.3d at 1098). The Tenth Circuit stressed § 7212(a)'s "broad scope," noting that "even legal actions violate § 7212(a) if the defendant commits them to secure an unlawful benefit for himself or others." United States v. Sorensen, 801 F.3d at 1225-26.

The Tenth Circuit has twice declined to decide "whether a conviction under § 7212(a) requires that the defendant knew that the advantage or benefit he sought was unlawful and, if so, whether the instruction here would adequately inform a jury of that requirement." United States v. Sorensen, 801 F.3d at 1230 (citing United States v. Williamson, 746 F.3d at 992). In United States v. Williamson, the Tenth Circuit left "to another day" whether § 7212(a) requires knowledge of illegality. 746 F.3d at 992. More recently, in United States v. Sorensen, the Tenth Circuit again concluded that "we need not decide that question." United States v. Sorensen, 801 F.3d at 1230.[12] Nevertheless, the Tenth Circuit in United States v. Sorensen upheld an

---

[12]The Court does not need to decide this issue here either, because its instruction tracks United States v. Sorensen's "knowingly and dishonestly" language, but the Court would like to clarify correct instructions instead of just avoiding reversible error. Generally, the issue is the knowledge instruction's specificity. Specifically, the question is whether an instruction which reads that corruptly means to act with intent to gain an unlawful advantage or benefit, does the Court need to give a separate instruction that the defendant must know that the advantage or benefit sought is unlawful. The Court concludes that the answer is yes.

The Court begins with some first principles. A jury instruction's purpose is to clearly instruct the jury on the law. See United States v. Assi, 748 F.2d 62, 65 (2d Cir. 1984); Elbel v. United States, 364 F.2d 127, 134 (10th Cir. 1966); 2A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 485, at 438 (4th Ed. 2010). This principle makes sense, as the jury's main role is to apply accurately the law to the facts, and, without clear legal instructions, the jury cannot fulfill that role. In the Court's experience, juries typically get it right. They take

instruction which defined "corruptly" under § 7212(a) as "to act knowingly and dishonestly, with the specific intent to gain an unlawful advantage or benefit either for oneself or for another by subverting or undermining the due administration of the internal revenue laws."  801 F.3d at 1229.  The Tenth Circuit observed that the "knowingly and dishonestly" instruction requires proof that the defendant "knew his actions were unlawful."  United States v. Sorensen, 801 F.3d

---

their duty seriously, they grapple with the facts, and they often accurately apply the law to those facts.  Even the most accurate archer, however, is only as good as his bow.  To equip the jury properly with the law, a court must perform a bit of a balancing act.  On the one hand, it needs to capture correctly all of the applicable law -- including its technical nuances; on the other hand, the Court should be concise and must explain the law in commonly used and understood language.  See Wright & Miller, Federal Practice and Procedure § 485, at 438-39 (4th Ed. 2010); Elbel v. United States, 364 F.2d at 134.  Repetition should be avoided, as should long-winded lectures, unless the law is so complex that a lengthy exposition is needed.  See Wright & Miller, Federal Practice and Procedure § 485, at 439-40 (4th Ed. 2010).

With that backdrop, the Court turns to the instruction at hand.  With this instruction, the jury needs to understand that, to convict on this element, the defendant must know that the advantage or benefit attained is unlawful.  See United States v. Sorensen, 801 F.3d at 1230.  The question, accordingly, is whether "to act with intent to gain an unlawful advantage or benefit" clearly conveys that the defendant must know that the advantage or benefit gained is unlawful.  To put the question slightly differently, if the defendant intends to gain an unlawful benefit, does the defendant know the benefit gained is unlawful?  The Court concludes that the instruction does not clearly convey that knowledge requirement and so a supplemental knowledge instruction is required.

Intent -- or its verb, intend -- is a common word with a clear meaning.  For example, very few would be confused by a sentence such as "I intend to go home at  5:30 P.M."  Intend means to plan or to mean to act.  See Intend, Black's Law Dictionary at 881 (10th Ed. 2014)("To have in mind a fixed purpose to reach a desired objective; to have as one's purpose; . . . to signify or mean.").  A juror would come to court with that meaning well in hand and would also understand that someone cannot unknowingly or accidentally intend to act.

Intending to act and knowing an act is unlawful are not always the same.  Someone can intend to lie to the FBI, but might not know that lying to the FBI is unlawful.  See 18 U.S.C. § 1001.  Similarly, it is possible that a reasonable juror might figure that someone could intend to make a tax decision that is dishonest but not necessarily unlawful.  Thus, a reasonable but mistaken juror could conclude that someone deliberately acting dishonestly -- but unaware that the action is unlawful -- violates 26 U.S.C. § 7212(a).  In light of this concern, the Court concludes that it is necessary to give a separate instruction that the defendant must know that the advantage or benefit sought is unlawful.

at 1230 (citations omitted).  Although the Tenth Circuit did not opine whether § 7212(a) "requires knowledge of illegality," it held that the instruction was appropriate, because it did not mislead the jury.  United States v. Sorensen, 801 F.3d at 1231.

In light of this precedent, the Court concludes that the majority of Gutierrez' proposed instruction is more appropriate than the United States' proposed instruction.  Here, Gutierrez proposes largely the same definition of "corruptly" as the one which the Tenth Circuit upheld in United States v. Sorensen, providing that "corruptly" requires that Gutierrez "acted knowingly and dishonestly, with the specific intent to subvert or undermine the due administration of the internal revenue laws."  Instruction Request Response at 2.  From United States v. Sorensen, Gutierrez omits only the language "to gain an unlawful advantage or benefit either for oneself or another."  The United States proposed instruction offers that missing language.  See Instruction Request at 24 (defining "corruptly" as "to act with the intent to secure an unlawful advantage or benefit either for oneself or for another.").   Thus, combining the two parties' proffered definitions of "corruptly" resembles the definition that the Tenth Circuit has upheld.  Cf. United States v. Sorensen, 801 F.3d at 1229 (defining "corruptly" as "to act knowingly and dishonestly, with the specific intent to gain an unlawful advantage or benefit either for oneself or for another by subverting or undermining the due administration of the internal revenue laws").  In upholding this instruction, the Tenth Circuit applied the "harmless error rule," inquiring whether the instruction "fairly, adequately and correctly state[s] the governing law and provide[s] the jury with an ample understanding of the applicable principles of law and factual issues confronting them."  United States v. Sorensen, 801 F.3d at 1229 (citations omitted).  The Court concludes that, here, the same definition from United States v. Sorensen would "fairly, adequately, and

correctly state the governing law," and that it would assist the jury with its resolution of the § 7212(a) charge.

The United States contends only that this language is "less precise" and "incorrect," but does not explain <u>why</u> it is improper other than that the Tenth Circuit has "already addressed the proper definition for the specific statute at issue." Instruction Request Reply at 2. The definition that the Tenth Circuit has used, however -- that "corruptly" as used in § 7212(a) "means to act with the intent to secure an unlawful benefit either for oneself or for another," <u>United States v. Winchell</u>, 129 F.3d at 1098 (citations omitted) -- is already incorporated into the proposed jury instructions. Further, the Tenth Circuit has not held that § 7212(a) does <u>not</u> require evidence that the defendant "knew his actions were unlawful." Finally, it is noteworthy that other circuits have adopted the "knowingly and dishonestly" language that Gutierrez' proffers into their jury instructions for § 7212(a) violations. <u>See</u>, <u>e.g.</u>, <u>United States v. Dean</u>, 487 F.3d 840, 853 (11th Cir. 2007)("Our Pattern Jury Instruction on this offense advises that a defendant acts 'corruptly' if he acts 'knowingly and dishonestly with the specific intent to secure an unlawful benefit either for himself or another.'"); <u>United States v. Saldana</u>, 427 F.3d 298, 303, 305 (5th Cir. 2005)(upholding an instruction that "[t]o act corruptly means to act knowingly and dishonestly with the specific intent to secure an unlawful benefit either for oneself or for another")(internal quotation marks omitted). In <u>United States v. Sorenson</u>, the Tenth Circuit cited those cases when it concluded that the "knowingly and dishonestly" language "requires proof that the defendant knew his actions were unlawful." 801 F.3d at 1230 (citing <u>United States v. Dean</u>, 487 F.3d at 853; <u>United States v. Saldana</u>, 427 F.3d at 303). Given this analysis, the Court will use the

"knowingly and dishonestly" language to instruct the jury as to the § 7212(a) charge. Thus, the Court overrules the United States' Objection to Gutierrez' definition of "corruptly."

### III.  A DELIBERATE-IGNORANCE INSTRUCTION FOR THE § 7212(a) CHARGE IS IMPROPER.

The Court concludes that the United States' proposed deliberate-ignorance instruction is inappropriate. "[A] deliberate-ignorance instruction is appropriate where a defendant 'denies knowledge of an operant fact but the evidence, direct or circumstantial, shows that defendant engaged in deliberate acts to avoid actual knowledge of that operant fact.'" United States v. Sorensen, 801 F.3d 1217, 1233 (10th Cir. 2015)(citing United States v. Baz, 442 F.3d 1269, 1271 (10th Cir. 2006)). The Tenth Circuit has stated that a deliberate-ignorance jury instruction is "appropriate upon two showings: '(1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact.'" United States v. Sorensen, 801 F.3d at 1233 (quoting Global-Tech Appliances, Inc. v. SEB S.A., 563 U.S. 754 (2011)). "The purpose of the instruction is to alert the jury that 'the act of avoidance [could be] motivated by sufficient guilty knowledge to satisfy the knowing element of the crime.'" United States v. Delreal-Ordones, 213 F.3d 1263, 1269-70 (10th Cir. 2000)(quoting United States v. Bornfield, 145 F.3d 1123, 1129 (10th Cir. 1998)). "A deliberate-ignorance instruction 'is rarely appropriate,'" however, "'because it is a rare occasion when the prosecution can present evidence that the defendant deliberately avoided knowledge.'" United States v. Delreal-Ordones, 213 F.3d at 1268 (quoting United States v. Francisco-Lopez, 939 F.2d 1405, 1409 (10th Cir. 1991)).

Here, giving the United States "the benefit of favorable inferences to be drawn []from" the evidence, the evidence tends to establish the first required showing for deliberate

ignorance -- that Gutierrez "had *subjective* knowledge of his criminal behavior." <u>States v. Delreal-Ordones</u>, 213 F.3d at 1268 (emphasis in original). Drawing inferences in the United States' favor, a reasonable juror could conclude that Gutierrez thought it was highly likely that the law required him to list his wage income on his income taxes. For example, Gutierrez complied with income tax laws in the past and knew that pretty much everyone else listed his or her wage income on his or her income tax returns. <u>See</u> March 29 Tr. at 86:22-87:9 (Gutierrez, Vierbuchen); <u>id.</u> at 87:17-18 (Gutierrez)("I [filed my tax returns], because everybody said you should."). Moreover, two courts had told him that some of his notions about the income tax laws are incorrect as a matter of law. <u>See</u> March 29 Tr. at 75:15-78:16 (Gutierrez, Vierbuchen); <u>id.</u> at 81:13-82:3 (Gutierrez, Vierbuchen). To be sure, those cases debunked only one of his premises, <u>see</u> March 29 Tr. at 84:20-85:11 (Vierbuchen, Gutierrez); <u>supra</u> n.10, but it is reasonable to infer that a court telling him that one of his unorthodox tax arguments is frivolous would have put Gutierrez on notice that his other unconventional tax theory, which the majority of Americans do not follow, also stands on shaky ground. From that background, it is reasonable to infer that Gutierrez would have known that it was highly likely he needs to list his wage income on his tax returns.

A deliberate-ignorance jury instruction is appropriate, however, only when the defendant "take[s] deliberate actions to avoid learning of that fact.'" <u>United States v. Sorensen</u>, 801 F.3d at 1233. The evidence does not show that Gutierrez deliberately avoided learning that he needed to list his wage income on his returns. For example, the IRS sent him many deficiency letters, but instead of throwing them away without reading them, which would suggest deliberate avoidance, Gutierrez "respond[ed] to every IRS letter." March 29 Tr. at 65:19-24 (Bowles, Gutierrez). <u>See</u>

March 29 Tr. at 68:12-19 (Bowles, Gutierrez).  Cf. March 29 Tr. at 72:5-7 (Gutierrez)("I would love to know where I am dead wrong.  I mean, that was my whole idea of corresponding with the[ IRS] was [for] them [to] show me the law.").  He, in fact, requested administrative hearings with the IRS on his tax law interpretation.  See March 29 Tr. at 66:9-16 (Bowles, Gutierrez).  Those actions demonstrate that Gutierrez was not attempting to blind himself to knowledge, but was actively seeking it.[13]  To be sure, there is some evidence that Gutierrez avoided certain information.  Gutierrez did not seek an attorney's opinion about his tax beliefs, nor did he read the entirety of the legal opinions upon which he relied.  See March 29 Tr. at 89:18-19 (Gutierrez, Vierbuchen); id. at 90:25-91:1 (Gutierrez, Vierbuchen).  The Court concludes, however, that evidence of such actions does not support a deliberate-ignorance instruction.  See United States v. Delreal-Ordones, 213 F.3d at 1268 (stating that a deliberate-ignorance instruction "'is rarely appropriate . . . because it is a rare occasion when the prosecution can present evidence that the defendant deliberately avoided knowledge.'" (quoting United States v. Francisco-Lopez, 939 F.2d at 1409)).  First, Gutierrez would not have known, or suspected with a high level of certainty, that, had he read the legal opinions' entirety, he would have discovered that he was required to list his wage income on his tax returns.  Although Gutierrez might have realized that it would be safer to read a document's entirety, safety does not equate almost certain knowledge

---

[13]The United States elicited testimony that the IRS responded to Gutierrez' correspondence, but Gutierrez did not read all of the IRS' sixty-page response entitled the "truth about frivolous tax arguments."  March 29 Tr. at 113:21-115:17 (Gutierrez, Vierbuchen).  The United States argues that Gutierrez' failure to read all of that sixty-page document -- specifically cases refuting his position about wage income not equaling taxable income -- demonstrates deliberate ignorance.  See March 29 Tr. at 115:18-23 (Gutierrez, Vierbuchen); id. at 141:13-20 (Kastrin).  At most, however, that Gutierrez did not read the IRS document shows that Gutierrez was indifferent learning about the law.  It does not show that Gutierrez deliberately avoided such knowledge, so it does not justify a deliberate indifference instruction.

that, had he kept reading, the additional text would have contradicted the selected portions he read.[14]  Second, Gutierrez' failure to seek out an attorney's opinion is insufficient here to conclude that he acted to keep himself deliberately ignorant, given that he sought legal opinions from other sources.

The United States' reliance on United States v. Fingado, 934 F.2d 1163 (10th Cir. 1991)("Fingado"), and United States v. Espinoza, 244 F.3d 1234 (10th Cir. 2001)("Espinoza"), is misplaced.  It is true that, in Fingado, the Tenth Circuit considered similar facts.  There, the defendant, Fingado: (i) failed to file his tax returns for several years based on his unique reading of the tax laws; (ii) did not consult an attorney or an accountant about his unique tax-law interpretation; (iii) attended seminars on tax avoidance; (iv) admitted that his tax interpretation differed from the IRS and millions of Americans; and (v) requested that the IRS send him the applicable law.  See Fingado, 934 F.2d at 1166-67.  Although Fingado's actions are similar to Gutierrez' here, the Court concludes that Fingado does not control, because the Tenth Circuit in Fingado determined only that giving a deliberate-ignorance instruction on those facts is not reversible error.  See Fingado, 934 F.2d at 1167.  A good district judge is not content with giving a set of jury instructions that merely survive appellate review.  Rather, a good district judge strives to conduct a fair trial by giving the best possible jury instructions.  While the Court could have probably given the deliberate-ignorance instruction here and have been safe on appeal, that

_____

[14]When it comes to legal opinions, it is often not necessary to read the entire document to derive its meaning.  For example, law students are often provided abridged versions of opinions and, the editing, purportedly, does not distort those opinions' meaning.  Indeed, a lawyer could probably read portions of this opinion and draw correct conclusions about certain subjects without reading its entirety.

reality does not mean that giving the deliberate-ignorance instruction was the best possible instruction.

Espinoza, on the other hand, is inapposite factually and legally. Espinoza deals with whether a defendant deliberately ignored signs that his wife was smuggling marijuana from Mexico. See Espinoza, 244 F.3d at 1243. Legally, Espinoza rejects the argument that the United States is not allowed to use the same evidence to show knowledge and deliberate avoidance. See Espinoza, 244 F.3d at 1244. Factually, a husband ignoring his wife's drug-smuggling does not help the Court determine whether Gutierrez ignored learning the tax laws, and, legally, no one has argued that the United States may not use the same evidence to show Gutierrez' knowledge and avoidance. Accordingly, the Court concludes that a deliberate-ignorance instruction is improper.

## IV.   THE UNITED STATES DOES NOT NEED TO PRODUCE GRAND JURY TRANSCRIPTS TO GUTIERREZ BEFORE TRIAL.

Gutierrez asks for Grand Jury transcripts to attack the Indictment, but Gutierrez is not entitled to those documents unless he shows a "particularized need" for them. United States v. Warren, 747 F.2d at 1347. See Douglas Oil Co. of California v. Petrol Stops Northwest, 441 U.S. at 222. "Particularized need is most often established when there is a need 'to impeach a witness, refresh his recollection, [or] test his credibility.'" United States ex rel. Stone v. Rockwell Int'l Corp., 173 F.3d 757, 759 (10th Cir. 1999)(quoting In re Lynde, 922 F.2d at 1454). Gutierrez must also show: "(1) the materials are needed to avoid a possible injustice in another judicial proceeding, (2) the need for disclosure is greater than the need for continued secrecy, and (3) the request is structured to cover only material so needed." United States v. Riley, 292 F.

App'x 717, 722 (10th Cir. 2008)(unpublished)(citing <u>In re Grand Jury 95-1</u>, 118 F.3d 1433, 1437 (10th Cir. 1997)).

Gutierrez has not made the requisite showing.  First, Gutierrez requests the transcripts so that he can determine whether the United States properly instructed the Grand Jury on willfulness and good faith.  <u>See</u> Motion at 6.  Gutierrez argues that he has established a "particularized need," because if he does not receive the transcripts before trial, he will be unable to challenge the Indictment on that ground.  Motion at 6-7.  It is true that Gutierrez must motion before trial to attack the Indictment on the ground that there was an error in the Grand Jury proceeding.  <u>See</u> Fed. R. Crim. P. 12(a)(3)(A)(v).  Nevertheless, Gutierrez identifies no reason to believe that the Grand Jury was instructed incorrectly on willfulness and good faith.  Because Grand Jury proceedings are afforded a presumption of regularity, <u>see</u> <u>United States v. R. Enters., Inc.</u>, 498 U.S. at 301, without some evidence showing that the United States improperly gave instructions to the Grand Jury, the Court will not breach the Grand Jury's secrecy for Gutierrez, <u>see</u> <u>United States v. Neha</u>, 376 F. Supp. 2d 1222, 1227 (D.N.M. 2005)(Browning, J.)(denying a request for Grand Jury transcripts, because the defendant proffered only "a theory" why he was entitled to the transcripts, but offered "no evidence" for his theory).

Second, Gutierrez requests the Grand Jury transcripts "as early *Jencks* material" so that he can challenge the Indictment before trial.  Motion at 6.  That ground also does not justify breaching the usual secrecy attending Grand Jury proceedings, because the request is "nothing more than a substitute for general discovery, which is insufficient to demonstrate a particularized need for such material."  <u>United States v. Riley</u>, 292 F. App'x at 722.  The Jencks Act requires the United States to produce its trial witnesses' prior statements, which it possesses, that relate to

the subject-matter of those witnesses' trial testimony.  See 18 U.S.C. § 3500(b).  The United

States' Jencks Act duty to disclose, however, does not trigger until after that witness testifies at

trial.  See 18 U.S.C. § 3500(b).[15]  Thus, Gutierrez' pretrial request is nothing more than a request

for early discovery.  Accordingly, the Court denies Gutierrez' request for Grand Jury transcripts.

In re Grand Jury 95-1, 118 F.3d at 1437 ("Relevance alone is insufficient; secrecy will not be

broken absent a compelling necessity for the materials.").[16]

## V.  GUTIERREZ' OUT-OF-COURT STATEMENTS ABOUT HIS TAX BELIEFS MAY BE ADMISSIBLE FOR A NONHEARSAY PURPOSE, BUT THEY ARE NOT ADMISSIBLE UNDER RULE 106.

The United States argues that the Court should exclude as hearsay Gutierrez' out-of-court

statements expressing disagreement with the tax laws.  The United States does not, however,

identify specific historic statements it seeks to exclude.  The Court concludes that, depending on

the statements' wording and context, those statements may be admissible for a non-hearsay

purpose such as showing Gutierrez' state of mind.  Without particular statements to consider,

however, the Court reserves any specific rulings.  The United States also contends that the rule of

completeness does not allow the admission of Gutierrez' statements about the United States' tax

laws that are in a recorded interview with a Department of Energy Contractor.  The Court agrees

with the United States, because the United States seeks to admit statements that Gutierrez made

in the interview for the limited purpose to show when Gutierrez filed returns and that he had

---

[15]If the Grand Jury transcripts contain Brady v. Maryland or Giglio v. United States material, the United States will need to produce that information earlier, even if it is in a witness' Grand Jury testimony.  See United States v. DeLeon, 2017 WL 2271430, at *47 (D.N.M. Feb. 8, 2017)(Browning, J.); United States v. Hykes, 2016 WL 1730125, at *19 (D.N.M. April 11, 2016) (Browning, J.).

[16]The Court notes that, at the hearing, Gutierrez seemed to agree that this result is the correct resolution of the Motion.  See March 13 Tr. at 7:4-5 (Bowles).

notice that the United States sought tax payments from him. Accordingly, his statements about his tax-law beliefs do not explain the statements that the United States will offer into evidence, place those statements into context, or otherwise ensure that the jury will not be misled.

### A. SOME OF GUTIERREZ' OUT-OF-COURT STATEMENTS MAY BE ADMISSIBLE FOR A NON-HEARSAY PURPOSE.

Out-of-court statements that are offered to prove the truth of the matter asserted are usually hearsay, and hearsay is usually inadmissible. See Fed. R. Evid. 801(c); Fed. R. Evid. 802. But see Fed. R. Evid. 801(d) (describing categories of statements that are not hearsay even when they are offered for their truth). If an out-of-court statement is offered for some reason other than to prove that the statement is true, then it is not hearsay. See United States v. Becker, 230 F.3d 1224, 1228 (10th Cir. 2000). For example, statements are often circumstantial evidence of the declarant's state of mind. See McInnis v. Fairfield Communities, Inc., 458 F.3d 1129, 1143 (10th Cir. 2006); Coffey v. United States, 2011 WL 6013611, at *5 n.32 (D.N.M. Nov. 28, 2011)(Browning, J.). As long as the declarant's state of mind is relevant, such statements are admissible notwithstanding the rule against hearsay. See McInnis v. Fairfield Communities, Inc., 458 F.3d at 1143. The Court must evaluate whether Gutierrez' out-of-court statements are admissible for a non-hearsay purpose on a statement-by-statement basis, and there is some evidence that Gutierrez has made many statements about his tax beliefs, which extend beyond the specific statements which the United States identifies in its Motion in Limine. See, e.g., Indictment at 4 (noting that Gutierrez told H&R Block that the IRS was a non-governmental branch of the United States Government). It is possible that Gutierrez may offer other previous statements. Consequently, the Court cannot make a specific determination whether all of Gutierrez previous statements must be excluded. Hearsay rulings are, of course, context specific,

and the Court can imagine Gutierrez statements that would be inadmissible hearsay. For example, a historic statement from him that "I believe that wages are not taxable income" would be inadmissible, because it would be offered for the truth and rule 803(3) of the Federal Rules of Evidence's exception would not apply. Under rule 803(3), hearsay is not excludable as hearsay if the statement is "of the declarant's then-existing state of mind." Fed. R. Evid. 803(3). Statements of belief, however, are not statements of then-existing state of mind. See Fed. R. Evid. 803(3) (excluding "statement[s] of memory or belief to prove the fact remembered or believed"); United States v. Rodriguez-Pando, 841 F.2d 1014, 1019 (10th Cir. 1988). Other historic statements from Gutierrez, however, might be admissible. For example, a statement from Gutierrez circa 2011 that "wage income is not taxable income" might be relevant circumstantial evidence of his criminal intent or lack thereof when filing his returns. The hearsay rules would not bar such a statement, because Gutierrez would not offer it for the truth, i.e., that wage income is not, in fact, taxable income.[17] Some historic statements might also be relevant and admissible under rule 803(3); for example, a statement such as "I mean to follow the tax laws" roughly contemporaneous with filing his returns would be circumstantial evidence

---

[17]Rule 803(3) is inapplicable, because the statement is not offered for the truth. Rule 803(3) would also not apply if it was offered for the truth, because the hypothetical statement is not a declaration of a state of mind. See Fed. R. Evid. 803(3) ("A statement of declarant's then-existing state of mind (such as motive, intent, or plan). . ."). The Court notes that, in some contexts, the hypothetical statement could become inadmissible, because the assertion's truth might be Gutierrez' belief. See United States v. Joe, 8 F.3d 1488, 1492-93 (10th Cir. 1993). In those instances, the Court would exclude the evidence as hearsay. Without specific statements, however, the Court cannot make a concrete ruling.

of his state of mind that he intended to follow the tax laws.  Accordingly, the Court reserves any

rulings for specific statements.[18]

## B. GUTIERREZ' STATEMENTS EXPLAINING HIS TAX BELIEFS DURING A DEPARTMENT OF ENERGY INTERVIEW ARE NOT ADMISSIBLE UNDER THE RULE OF COMPLETENESS.

Gutierrez contends that the rule of completeness -- rule 106 of the Federal Rules of

Evidence -- allows the Court to admit Gutierrez' out-of-court statements if, in fairness, the jury

should hear them contemporaneously with the United States' evidence.  See Motion in Limine

Response at 2-4. The United States, in response, proffers Gutierrez' assertions, which it intends

to introduce to show that the rule of completeness is inappropriately invoked.  See Motion in

Limine Reply at 6-9.  To evaluate whether the Court should introduce Gutierrez' out-of-court

statements under rule 106, the Court determines whether "(1) it explains the admitted evidence,

(2) places the admitted evidence in context, (3) avoids misleading the jury, and (4) insures fair

and impartial understanding of the evidence."  United States v. Lopez-Medina, 596 F.3d at 735.

The Court concludes that, under those criteria, the statements that the United States seeks

to introduce do not require the Court to admit Gutierrez' other statements.[19]  The United States

---

[18]To the specific statements within the United States' proffered transcript, the Court rules infra, nn. 23-32.

[19]Rule 106 is a fairly special rule in that it allows the Court to admit otherwise inadmissible hearsay if the statements are needed to provide the jury context.  See United States v. Lopez-Medina, 596 F.3d 716, 735 (10th Cir. 2010).  But see United States v. Terry, 702 F.2d 299, 314 (2d Cir. 1983)("Rule 106 does not render admissible evidence that is otherwise inadmissible.").  Thus, the Court cannot exclude Gutierrez statements, merely because they are hearsay.

seeks to admit the following Gutierrez' statements[20] from an interview he had with Heather

Howard,[21] a Department of Energy contractor, about Gutierrez' security clearance:

Howard:      Your participation in this discussion is voluntary and the information we discuss today is for use by DOE in making a determination on your eligibility to hold a clearance. Okay, do you have any questions at this time?

[Gutierrez[22]]: No.

. . . .

Howard:      Is it correct that you were informed in approximately February of this year 2007 that you were the subject of a criminal investigation of tax fraud.

Gutierrez:   Yes.

. . . .

Howard:      So when you mean administrative hearing was filed, what exactly does that mean?

Gutierrez:   I will read the document. It says a formal administrative hearing on the above reference protest will be held on March 12th. This was submitted by the Taxation and Revenue Department of the State of New Mexico

. . . .

Howard:      Okay. Why do you think that a[n] administrative hearing was filed or scheduled?

Gutierrez:   They claim that I owe taxes for 2003.

. . . .

---

[20]The Court provides Howard's statements to provide context to Gutierrez' answers.

[21]Sometime after this interview, Ms. Howard changed her last name to Loftis. See Draft Trial Transcript at 23:14-15 (taken March 27, 2017)(Kastrin)("March 27 Tr.").

[22]The transcript names Howard as the person responding to the question, but given that Howard was asking Gutierrez this question, the Court concludes that Gutierrez responded.

| | |
|---|---|
| Howard: | So are they alleging that you have filed . . . for the tax year[s] 1994 to present? |
| Gutierrez: | Yes. |
| Howard: | [T]he allegation that you just described to me that the IRS is claiming, that you haven't paid taxes since 1994 to the present is just confusing me a little bit because I was under the understanding that in 1997, your wages were garnished to satisfy tax debt, is that correct? |
| Gutierrez: | Right for I believe it was '93 |
| Howard: | For 1993. |
| Gutierrez: | Yeah. |
| Howard: | And are the allegations correct? Have you not filed? |
| Gutierrez: | That is true, I have not filed. |
| Howard: | For the tax year 1994 up until the present? |
| Gutierrez: | Yes. |
| . . . . | |
| Gutierrez: | Well, I went ahead and filed for 2003. |
| . . . . | |
| Howard: | So what was the date that you filed for 2000, 2003, 2004 and 2005 state taxes? Just approximately, you can give me the month. |
| . . . . | |
| Gutierrez: | Yes, for 2003, it was in March. |
| Howard: | Okay. |
| Gutierrez: | And then 2004 and 5 were probably done in April. |
| Howard: | Okay. So you just did that with the state. You didn't file taxes with the IRS at all, correct? |

Gutierrez:      Correct.

Howard:         Okay.  So, to date, to date, as of July 18th, 2007, you have not filed
                with the IRS since 1994.

Gutierrez:      Yes.

Howard:         Or I guess to include the year 1994.

Gutierrez:      That's correct.

Howard:         So, since 1993.  And for your state taxes, the only years that you
                have filed since 1993 is 2003, 2004 and 2005.

Gutierrez:      I actually filed 2006 also.

Howard:         Okay.  And 2006.  And when did you file 2006?

Gutierrez:      Mm, before the April 15th deadline.

. . . .

Howard:         And I'd like to jump back again also.  Again, you filed with the
                state, 2003, 4, 5 and 6.  Did you pay?

Gutierrez:      Yes.

. . . .

Howard:         And what are your future intentions as far as filing?

Gutierrez:      With the state, I will continue to file.

. . . .

Howard:         Have you been receiving any documentation from the IRS
                indicating that you owe or that you need to file?

Gutierrez:      Yes.

. . . .

Howard:         Do you have state and federal taxes deducted from your paycheck?

| | |
|---|---|
| Gutierrez: | Yes. |
| Howard: | And, uh, how many exemptions are you claiming currently? |
| Gutierrez: | Um, with, well, as far as the lab is concerned, it's, uh married with ten. |
| Howard: | With ten dependents? |
| Gutierrez: | Yes, or exemptions. |
| . . . . | |
| Howard: | Are you currently married? |
| Gutierrez: | No. |

Interview Held at the U.S. Department of Energy NNSA Service Center on July 18, 2007, at 1-21 (taken July 18, 2007), filed March 17, 2017 (Doc. 68)("NNSA Interview").   Gutierrez does not specifically identify what statements from the NNSA Interview he seeks to introduce under rule 106, but based on Gutierrez' argument that the Court should admit his statements about his tax beliefs, the Court surmises that he seeks admission of the following:

| | |
|---|---|
| Howard: | And why do you choose not to file? |
| Gutierrez: | I've done research with the Internal Revenue Code and could not find anywhere where it lawfully requires me to file a return, or in fact doesn't even make me liable for, for the tax that they allege.[23] |

---

[23]There are two assertions within this sentence, neither of which are admissible if Gutierrez offers them at trial, notwithstanding rule 106.   First, Gutierrez asserts he has done research on the tax laws.  This assertion's relevance would be only for Gutierrez' state of mind. The Court cannot properly admit this statement for that purpose, however, because to admit the statement for that purpose, the jury would have to accept the statement for its truth, i.e. that Gutierrez, in fact, researched the tax laws.  Second, Gutierrez asserts that he could find no law requiring him to file a return or imposing liability if he did not file a return.   Again, the statement's relevance would be only for Gutierrez' state of mind, but it cannot be offered for that purpose, because the jury would have to accept the underlying truth of the statement that Gutierrez did not find any applicable law.  No hearsay exceptions apply.  Rule 803(3) is inapposite, because neither statement expresses Gutierrez' then-existing state of mind, such as

I have been in contact with the Internal Revenue Code, or Internal Revenue Service[24] and have written a statement to them that I would, more than happy to pay the tax that they allege I owe if they would simply show me the law that says I'm liable for that tax and that I have a law, uh, there's a law that requires me to file a return.[25] And they never did respond.[26]

Howard:      Okay.

Gutierrez:      So the presumption there is that they, there is no law.[27]

---

his intent or plan; rather, together, the assertions relay an action Gutierrez has done and his findings resulting from that action.

[24]The assertion here that Gutierrez contacted the IRS in the past is inadmissible if he offers it at trial notwithstanding rule 106. The same reasoning from supra n.23 applies; the assertion's potential relevance is only that Gutierrez' actions are circumstantial evidence of his state of mind, but to demonstrate his state of mind, the jury would have to accept the statement's truth that Gutierrez contacted the IRS. Similarly, Gutierrez cannot properly invoke a hearsay exception; at the time he made the statement, Gutierrez was not planning to contact the IRS, which might implicate 803(3). Rather, he has already contacted the IRS.

[25]There is a hearsay within hearsay issue here, and both levels are inadmissible. Gutierrez' assertion within the letter is a conditional phrase: he will be happy if the IRS shows him the applicable law triggering his tax liability. The statement is inadmissible for its truth, because 803(3) does not apply to future states of mind, but to then-existing states of mind. Gutierrez is not relaying that he is happy or unhappy now; rather, he asserts that he could be happy in the future if some fact comes into being. In other words, this statement is a belief about future events, which rule 803(3) does not cover. See United States v. Smallwood, 299 F. Supp. 2d 578, 586 (E.D. Va. 2004)(Ellis, J.); Posey v. Lafler, 2011 WL 4889087, at *6 (E.D. Mich. Oct. 12, 2011)(Murphy III, J.). The second hearsay assertion -- that Gutierrez wrote a letter with the above-analyzed contents -- is inadmissible for its truth. Rule 803(3) does not apply, because it is not a statement about his then-existing mental, physical, or emotional state; it is a statement about his past action of writing a letter. There is no relevant non-hearsay purpose, because for this statement to show Gutierrez' state of mind, the truth of the statement must be accepted.

[26]That the IRS never responded is only relevant to show the lack of response's effect on Gutierrez -- the effect on hearer. The statement's underlying truth must be accepted to consider that effect on the hearer, so the statement is inadmissible.

[27]Under rule 803(3), Gutierrez' statement, that he presumes that there is no law requiring him to pay income taxes, is admissible to show that Gutierrez believed there was no law, even

| Howard: | Okay, so just to be sure again for the record that I'm understanding you correctly, the reason you're not filing is because you've done some research and you cannot find any law that mandates you pay or file taxes? |
|---|---|
| Gutierrez: | On income.[28] |

. . . .

| Howard: | Okay, so you, you plan not to file? |
|---|---|
| Gutierrez: | That's correct.[29] |
| Howard: | Okay.  And the reason? |
| Gutierrez: | I believe that it's my right as a citizen to follow the laws and they should also follow the laws.  And [there's] nothing in the law that requires me to pay the alleged tax, and therefore, no lawful reason for me to file a return.[30] |
| Howard: | Okay. |

---

though it would not be admissible to show that such law existed.  See Fed. R. Evid. 803(3). Gutierrez did not try to admit this statement into evidence at trial, however.

[28]This assertion is almost identical to the assertions considered supra n.23, so is inadmissible for the same reasons.

[29]This assertion is admissible under rule 803(3) -- it is a statement of his then-existing plan not to file tax returns.  Although admissible, Gutierrez did not offer this statement or argument at trial to admit this evidence.  See March 27 Tr. at 204:2-217:25 (Bowles, Court, Kastrin, Loftis).

[30]These statements are admissible under rule 803(3), because they are statements of Gutierrez' then-existing state of mind -- that he believed at the time that he was not legally obligated to file a tax return.  The statements are not statements of belief meant to prove the truth of the matter believed.  See Fed. R. Evid. 803(3) (stating that statements of belief or memory are not exceptions to hearsay if they are offered to prove the truth of the matter believed or remembered).

Gutierrez:     If they can show me the law, I will gladly pay the tax.[31]

Howard:        Okay.

Gutierrez:     Well maybe not gladly, but I will pay the tax.[32]

NNSA Interview at 13, 16-17.  The general nature of the evidence that the United States seeks to introduce is: (i) if and when Gutierrez filed his state and federal taxes; (ii) that Gutierrez received notice that he owed taxes and that he was subject to a criminal investigation; and (iii) the number of exemptions he claimed.  In contrast, the statements that Gutierrez seeks to introduce are explanations why he did not pay his taxes.  The jury does not need Gutierrez' tax-belief statements to understand when or if Gutierrez paid his taxes.  Gutierrez' tax beliefs will not, for example, correct a juror's hypothetical misapprehension that Gutierrez filed his tax returns in 2002, nor will Gutierrez' beliefs better help a juror understand that he filed his state returns in 2003.  Likewise, the jury does not need Gutierrez' tax-belief explanations to deduce whether Gutierrez had notice that he owed taxes or the number of exemptions Gutierrez claimed.  Gutierrez' tax beliefs might give the evidence some context, but that is only one part of the four-part test.  See United States v. Lopez, 596 F.3d at 735.  The Court concludes, accordingly, that it will not admit Gutierrez' tax-belief statements under the rule of completeness.

**IT IS ORDERED** that: (i) Defendant Darryl J. Gutierrez' Motion for Instruction on Willfulness and Good Faith Element and For Production of Grand Jury Transcript, filed February 17, 2017 (Doc. 57), is granted in part and denied in part; (ii) Plaintiff United States of America's

---

[31]Because this assertion is a belief about future events, it is inadmissible for the same reason explained supra n.25.

[32]Because this assertion is a belief about future events, it is inadmissible for the same reason explained supra n.25.

Motion in Limine to Exclude Defendant's Self-Serving Declarations as Inadmissible Hearsay, filed March 8, 2017 (Doc. 61), is granted in part and denied in part; and (iii) the requests in Defendant Darryl Gutierrez's Brief in Support of Objection to Deliberate Ignorance Jury Instruction, filed March 28, 2017 (Doc. 81), are granted. The Court will instruct the jury on willfulness, and it will also instruct the jury on good faith if the evidence at trial warrants it. The Court denies Gutierrez' request, however, to receive the Grand Jury transcripts early apart from those transcripts that the United States must produce pretrial pursuant to Brady v. Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972). The Court reserves its rulings on the admissibility of all of Gutierrez' out-of-court tax-belief statements, although it has ruled on some those statements. The rule of completeness does not provide Gutierrez an avenue to introduce his statements from his Department of Energy interview about his security clearance. Finally, the Court will not instruct the jury on deliberate ignorance.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

John C. Anderson
   United States Attorney
Reeve L. Swainston
Holland S. Kastrin
Margaret M. Vierbuchen
   Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

Jason Bowles
Bowles Law Firm
Albuquerque, New Mexico

   *Attorney for the Defendant*